N. P. HANSON, Appellee v. I. W. KLINE ET AL, Appellants.

Attorney and client: PRIVILEGED COMMUNICATIONS. The statute which renders communications between attorney and client privileged is to be given a liberal construction in favor of the party intended to be benefited; and it applies to a communication concerning which the attorney was expected to act, although no employment actually followed and the client had no recollection of the conversation; but where the relation or contemplated relation has ceased to exist the statute has no application to a subsequent communication in an ordinary conversation concerning the same matter.

Evidence: CO-PARTIES: INSTRUCTION. Evidence which is competent as against only one of several co-parties is admissible; but its effect may be limited by an instruction if requested.

Direction of verdict: WAIVER OF ERROR. The introduction of evidence by a defendant, after the overruling of his motion for a directed verdict at the close of plaintiff's case, is a waiver of any error in the ruling.

Direction of verdict: WITHHOLDING RULING: REVIEW. The action of the court in reserving a ruling on a motion to direct a verdict at the close of plaintiff's evidence until the testimony is all in will not be reviewed, where a ruling was not insisted on and no exception to the court's action in reserving a ruling was taken.

False representations: CHARACTER OF LAND. One who falsely represents the character, location and condition of land and that his statements are based solely upon reliable information which is also false, thereby inducing another to act to his injury, is liable for fraud; and this liability is not relieved because of any duty devolving upon the injured party to investigate.

Fraud: CONCERT OF ACTION. Concert of action in the making of false representations, thereby inducing one to purchase land to his injury, is sufficient to render parties making the representations liable for the fraud, irrespective of financial interest in the transaction; and such concerted action may be shown by the declarations, conduct and acts of the parties.

False representations: ISSUES: INSTRUCTIONS. Where the parties

7   in an action for false representations by mutual consent abandon the issue as raised by the pleadings, that the representations were made as from personal knowledge, and try the case upon the theory that defendants disavowed personal knowledge, the court should disregard the issue as made by the pleadings and instruct upon the question presented by the evidence.

*Appeal from Calhoun District Court.*— HON. F. M. POWERS, Judge.

THURSDAY, OCTOBER 24, 1907.

ACTION at law to recover damages arising out of false representations in connection with an exchange of properties. The defendants, additional to Kline, are W. E. Gray and J. E. Gray, and at the time in question all the parties lived in Rockwell City, Calhoun county. The petition alleges that in July, 1904, plaintiff was the owner of a stock of merchandise in Rockwell City, valued by him at $2,000, which he was induced by the defendants Gray to trade to the defendant Kline for a farm of one hundred and sixty acres situated in Hayes county, Nebraska. The specific averment is that defendants entered into a conspiracy to bring about such trade by false representations respecting the Nebraska farm, and that, pursuant thereto, the farm was falsely represented, and the trade thereby accomplished, greatly to his damage. The defendants answered separately, and each denied the charge of fraud as contained in the petition. On the trial plaintiff had a verdict as against all the defendants jointly, on which judgment was entered, and the defendants appeal.— *Reversed and remanded.*

*J. M. Parsons, M. W. Frick,* and *J. F. Lavender,* for appellants.

*Healy Bros. & Kelleher* and *E. C. Stevenson,* for appellee.

BISHOP, J.— A somewhat extended statement of the evidence *pro* and *con* seems to be necessary to an understanding of the questions made by the appeal.

W. E. Gray is a lawyer, and his son, J. E. Gray, a dealer in real estate. The latter, having in his hands for disposition the Nebraska farm owned by Kline, approached plaintiff and proposed a trade of properties. Plaintiff testified that in the course of the negotiation, Gray represented the land to be a level tract, good farm land, as good as any in Calhoun county, in a good neighborhood, with fifty acres broke and fifty acres under fence, with a small house, a barn, a well with windmill; that it was worth $1,900 cash.

I told him that I would not trade for the farm because I could not go and see it. He said: 'You don't need to go and see it because what I say you can believe. You need not be afraid to trade because I am not going to lie to you or cheat you, and you must not think so because we are old friends.' He wanted me to go to his father and show him the abstract. And he said: 'You know my father. He has been your lawyer for many years. My father knows about the land, and you should go to him, and nobody else.' I asked him if he had been out to the land, and he said he had not seen it. I asked him how he knew about the land, and he said: 'I know what somebody else said; but it don't make any difference to you because you can depend on what I say.' He gave me the abstract and other papers, and I took them to W. E. Gray, who looked them over and said the title was good. He said: 'If you make that trade with J. E., you make a good deal.' I asked him about the land out there, and he said it is all right. He said: 'The farm is a good piece of land; and you can make a good ·home out of it.' He described the farm and inprovements in the same way J. E. Gray had described them. He said he had never been there, but he knew it was good land just like he said. He pointed out in the abstract that the land had been mortgaged once for $2,000, and had sold once for $1,200. He pointed out the $1,200 in contract for loan. I know very little about abstracts, and could not read it. He did not tell me that the abstract had not been brought down for four years. I said:

' If it is as you say, we will make the deal.' I did not need a lawyer very much; but, when I did, I went to W. E. Gray. My stock of goods was worth $2,000.

Plaintiff also made it appear that during the negotiations he had told J. E. Gray that he could not make the trade, as he had no ready money to pay the expense of going to the farm; that thereupon Gray offered to loan him $150, and take a mortgage on the farm. And contemporaneous with the execution of the papers evidencing the trade the loan was made; the money for the purpose being procured by J. E. Gray from his father. The wife of plaintiff testified that, while at the office of W. E. Gray with her husband, said Gray represented the farm as lying within one and one-half miles from a little town where there was a store and a post office. And she says that, as he said that, his son, Ross Gray, who was in the office, spoke up and said, " There was no store there "; that Mr. Gray looked over at Ross, and Ross turned away.

The abstract of title, and the accompanying papers, given to plaintiff by J. E. Gray and thereafter exhibited to W. E. Gray, were introduced in evidence. The abstract bears date October, 1900, and shows a homestead entry by one Jones in August, 1887. During the next month Jones executed two mortgages to the Nebraska Mortgage Company, one for $250, and one for $37.50. In 1892 a release of mortgage was filed by the mortgage company, but it does not appear to which of the mortgages it was intended to have application. In 1890 Jones conveyed to one Bradley; the consideration recited being $2,000. In 1900 Bradley conveyed to one Pratt, the consideration recited being $1,000. No further conveyances appear. The accompanying papers consisted of an unrecorded deed from Pratt to Kline, and a so-called contract for a loan of $250 executed by Jones to the Nebraska Mortgage Company. The contract is, in fact, an application for a loan on the land in question, and, under the head of " Questions to be answered," appears this ques-

tion, " What value do you place on the farm ? " and the an-
swer, " $1,200."

Respecting the land conditions, the evidence makes it ap-
pear that it lies about twelve miles from any town; that the
tract in the larger part is cut up by canyons and ravines —
running in various directions — with ridges, or " hog-backs "
intervening, many of which are so steep as to be incapable
of ascent by a pedestrian; that, while the soil on the level
strips or patches is good, that in and about the canyons and
ravines is of no value; that the place as a whole is of no value
for farming purposes, and only of the value of about $250 for
any purpose; that at present there are no improvements what-
ever, although it appears that while owned by Jones he had
broken up and fenced a number of acres; that he had built
a dugout house in the bank of a ravine, and a small barn;
also had dug a well and put up a windmill.   J. E. Gray in
testimony answered that prior to the trade he had no knowl-
edge or information respecting the farm, except that at the
time Pratt sold to Kline he overheard Pratt say that when
he, Pratt, bought the farm in 1900, he was given to under-
stand that there was some kind of a house, stable, and well
with a windmill on it, but that he knew nothing about it.
And the witness insisted that this much, and no more, he told
to plaintiff.   He admitted on cross-examination that under
his arrangement with Kline he was to and did receive for his
services the sum of $150 in cash, and a one-half interest in
the stock of goods.   W. E. Gray, in testimony, denied hav-
ing any knowledge or information concerning the farm; de-
nied having made to plaintiff any statements or representa-
tions concerning the same; denied having anything to do
with the trade, except that he was asked to draw up the neces-
sary papers, which he did.   He further insisted that, when
told of the proposed trade, he strongly advised plaintiff
against it until he, plaintiff, had been out to see the farm.

1.   Several rulings on evidence are complained of.   We
shall notice only such thereof as seem to merit attention.

M. R. McCrary, an attorney at law of Rockwell City, was

1. ATTORNEY
AND CLIENT:
privileged
communica-
tions.

called as a witness by defendants, and their counsel sought to interrogate him with reference to a conversation had with plaintiff on the subject of the trade with Kline while the negotiations looking thereto were going on.   Counsel for plaintiff interrupted, and, in answer to questions propounded by him, the witness stated that within his understanding, as of the time and at present, the relation of attorney and client existed between himself and plaintiff at the time of the conversation; that it was his (the witness) expectation that he would be called upon to draw up the necessary papers in consummation of the trade.   In answer to counsel for defendants, the witness stated that he had never been employed by plaintiff for any purpose as against W. E. Gray.   Objection was then made by plaintiff under the statute (Code, section 4608), and sustained.   Counsel for defendants insist that this was error for two reasons:   First, that plaintiff having testified at one point on his cross-examination that he had no recollection of talking with McCrary on the subject of the trade, and at another point that " McCrary had never been my attorney," he was now estopped from insisting upon an objection that could avail him only on the assumption that the relation of attorney and client had existed; second, that, in any event, the objection was not open to plaintiff as against W. E. Gray.   We think the objection was properly sustained. The statute was intended to accomplish a beneficent purpose, and to that end it will be given a liberal construction in favor of the parties intended to be benefited.   *Battis v. Railway,* 124 Iowa, 623.   It is not important that plaintiff did not remember talking over the matter of the trade with McCrary.   The latter insisted that he was consulted about the trade, and expected to act in the matter of carrying the same into execution.   This expectation, it seems, for some reason was not fulfilled.   But communications looking to an employment, although no employment in fact followed, are

equally protected by the statute.    23 Am. & Eng. Ency., 63.
And it is fair to presume that what plaintiff meant by saying
that McCrary had never been his attorney was that he had
never actually employed him.

The witness was also interrogated with reference to a con-
versation had by him with plaintiff subsequent to the trade,
and after the latter had been out to Nebraska to see the farm.
And here, again, the objection of the statute was interposed.
It appears that thereupon the jury was excused from the room,
and the witness was interrogated on the subject by counsel
and the court.    He answered that he had met plaintiff on the
street, and was told by him of the conditions his visit to the
farm had disclosed.    The witness then says that he reminded
plaintiff of what he had told him in the previous conversa-
tion about buying the farm without having first seen it, to
which plaintiff replied that W. E. Gray had also told him
that he ought not to make the trade without first inspecting
the farm.    The objection was then renewed and sustained.
We think the evidence should have been received.    The
privilege of the statute was designed to protect parties in
making full and free confidential disclosure, to the end that
the attorney applied to may be enabled to properly perform
his professional duties.    And the relation of attorney and
client must exist at the time of the disclosure, prospectively.
or in fact.    To this effect are all our cases on the subject.
Citation of these will suffice.    *Theisen v. Dayton,* 82 Iowa,
74; *Wyland v. Griffith,* 96 Iowa, 24; *State v. Swafford,*
98 Iowa, 362.    So where one consults with an attorney with
a view to employment, but, as in this case, for some reason
does not do so, or if there has been an employment which has
been wholly determined, communications thereafter made to
the attorney in the course of ordinary conversation are
not privileged.    And this is true notwithstanding the con-
versation has relation to the very matters which were the
subject of the consultation previously taking place.    Such
a communication cannot be regarded as confidential within

the meaning of the statute, nor does the relation exist.   On commonest principle the rule cannot be invoked where the reason thereof is wholly wanting.   This conclusion is abundantly supported by authority.   See 23 Am. & Eng. Ency., 63, and cases cited in the note.   That the ruling complained of was prejudicial cannot be doubted.   The evidence sought to be introduced would have been directly corroborative of the evidence of W. E. Gray, and if before the jury, and believed, it is not altogether unlikely that, in deciding between the conflicting statements of said Gray and the plaintiff, a different result might have been reached.

A witness called by plaintiff was interrogated with reference to certain declarations by J. E. Gray subsequent to the closing of the trade.   Defendants objected to this on the

2. EVIDENCE: co-parties: instruction.

ground that the evidence was not competent as against W. E. Gray and Kline.   This may be so, but it was competent as against J. E. Gray.   And defendants could have had the matter correctly placed before the jury by a request for an instruction.   This they did not do.

II.   At the close of the evidence for plaintiff, defendants Kline and J. E. Gray jointly moved for an instructed verdict on the ground, variously stated, that as to them the

3. DIRECTION OF VERDICT: waiver of error.

evidence did not warrant a recovery by plaintiff, and this motion was overruled.   The moving defendants insist that here was error. As said defendants did not see fit to stand on the ruling, but, on the contrary, proceeded to introduce their evidence, it must be said that the error in the ruling, if any there was, was waived.   *Cushman v. Fuel Co.,* 116 Iowa, 618, 6 Ency. Pl. & Pr., 700, and cases cited in note.

III.   The defendant, W. E. Gray, also moved for a directed verdict in his favor, and on the like ground, and ruling on this motion was reserved by the court until all the evidence had been introduced.   Complaint is made of this as error.   Conceding that it was the duty of the court to rule

upon the motion when presented, we cannot consider the

**4. DIRECTION OF VERDICT: withholding ruling: review.** complaint, as defendant not only did not insist upon a ruling before the trial was further proceeded with, but he did not object or save an exception.    At the close of the evidence as a whole, the motion was called up and overruled, and thereof the defendant complains.    Accepting the testimony for plaintiff as correctly presenting the facts — and this for the present purpose we are bound to do — the question here made narrows down

**5. FALSE REPRESENTATIONS: character of land.** to this: Were the representations as made such as to be actionable in any event?    Reduced to a sentence, the representation was that the land was level, etc., situated in a good neighborhood, near a small town, and had thereon certain improvements.    True, in making the representation defendant expressly stated that he had never seen the land.    This, of course, had effect to advise plaintiff that the representation was not made from personal knowledge.    But the further effect was to give plaintiff assurance, as plainly as words could have done, that the description of the farm as given was based upon information, accurate and reliable, derived from others.    It is true enough that one who makes a representation respecting existing conditions, and in doing so expressly states that he does not speak from personal knowledge, but is merely repeating information received from others, and he honestly repeats such information, believing it to be true, he cannot be guilty of a fraud.    All the authorities are to this effect.    But, if he falsely states that he has information when he has none, or if he knows his information is false, or if he intentionally misstates his information, and by the representation he makes he induces another to act to his damage, he may be held guilty of a fraud. ' 14 Am. & Eng. Ency., 102, citing *Cooper v. Lovering,* 106 Mass., 77; *Savage v. Stevens,* 126 Mass., 207; *Hanscom v. Drullard,* 79 Cal., 243 (21 Pac., 736); *Merriam v. Lumber Co.,* 23 Minn., 314.

Now, as we have seen, the attitude of defendant is that

in truth he was ignorant of the farm conditions. To use his own language: "I knew nothing about it in any way, shape, form or manner." In view of this, and it being taken as true that he made the representations charged against him, scienter is not wanting, and a finding of fraud would be clearly warranted.

But counsel say that plaintiff had a duty in the premises — that of making an inspection of the farm for himself, the same being equally accessible to him as to defendant. It was ruled to the contrary in *Scott v. Burnight,* 131 Iowa, 507, a case presenting similar features.

Again, it is said there was no evidence of conspiracy. It is not material that there should be direct evidence on that point. It is enough if there be proof of concert of ac-
6. FRAUD: concert of action.   tion; and such must arise, of course, out of the declarations, conduct, and acts of the parties. Again, accepting as true the testimony of plaintiff, a finding was warranted that this defendant was assisting his son to make the trade, and he was doing this by making use of the same representations and arguments as were made by his son. If the one can be held to a liability, it would seem inevitable that the other must. Nor can it make any difference that this defendant was not financially interested in the trade. One may not knowingly and intentionally assist another to accomplish a wrong, and escape liability by pleading that he was not to and did not share in the fruits of the wrongdoing. "Indeed, where the misrepresentations are made by an apparently disinterested third person, he is held to even a stricter liability than the vendor, and is not excused for commendatory and exaggerated false statements as to the value and quality of the property." 20 Cyc. 84, and cases cited. In the light of these considerations, and as the jury might well conclude that plaintiff placed reliance on the representations made to him, and as the proof of damage is conclusive, we conclude that a case was made for

the jury, and hence there was no error in the ruling com-
plained of.

IV.   The theory of the petition was that the representa-
tions claimed to have been made by defendants were made
as from personal knowledge — such is the distinct allegation.

7. FALSE REPRE-      In a request presented, the defendant asked
SENTATIONS:       that the jury be instructed that if the false
issues: in-
structions.       representations were made as alleged, but
that it was stated to plaintiff at the time that they were made
on information derived from others, and not on personal
knowledge, then plaintiff could not recover.   The request
was refused, and the jury was instructed strictly on the the-
ory of the petition; that is, they were told that if defendants
in representing the condition of the farm did so as of their
own personal knowledge, and so stated to plaintiff, and the
representation was false, and plaintiff relied on such repre-
sentation to his damage, the defendant would be liable.
And, *contra,* if the representations were not so made as al-
leged, then plaintiff could not recover.   The jury was not
otherwise instructed on the subject.   We think here was
error.   Should it be conceded that the instruction given cor-
rectly stated the law applicable to the case, the defendants
were entitled to a verdict.   This is so because there was no
evidence on which to base a finding to the contrary, but, as we
have seen, plaintiff himself declares that in making the rep-
resentations alleged defendants expressly disavowed any and
all personal knowledge.   Hence the proof did not meet the
issue.   Accordingly, we must go back to the query:   Did
the instruction correctly state the law applicable to the case?
If we are to judge alone from the issues made in pleading,
the answer must be in the affirmative.   If we are to judge
from the issues as developed on the trial, then the call for a
negative answer is imperative.   We say issues developed on
the trial, because it is plain that plaintiff did not go into the
trial relying upon representations made as of the personal
knowledge of the defendants.   At the very outset, he testified

that defendants denied having any personal knowledge. And it is evident that from beginning to end the defendants did not consider that they were called upon to face the strict issue as made by the pleadings. Plaintiff did rely on representations professedly made on information and belief, and defendants trained their forces accordingly. This being true, there arises the further question whether or not it was competent for the court, and its duty, to disregard the strict issue as made in the pleadings, and instruct according as the parties had made the issue on the trial. That it was competent for the court to do so we have no doubt. *Beach v. Wakefield*, 107 Iowa, 567; *Fenner v. Crips*, 109 Iowa, 455. So, also, we think it was its duty to do so, and, in view of the case presented by the record, that failure amounted to error. Under our system, it is left for the parties to frame the issues, and, if they proceed without objection — and such is the case here — to the trial of an issue not presented by the pleadings, it amounts to a consent to try such issue. The issue is then rightfully in the case. *Mitchell v. Joyce*, 76 Iowa, 449; *Bank v. Boesch*, 90 Iowa, 47; *Beach v. Wakefield, supra; Erickson v. Fisher*, 51 Minn., 300 (53 N. W., 638). And, the issue being rightfully in the case, the court must instruct upon it. *Potter v. Railway*, 46 Iowa, 399; *Hill v. Aultmann*, 68 Iowa, 630. We must presume that the court was fully advised of the shift in the issue. Attention to the course of the trial as it proceeded was its duty. Moreover, there was before it the request for instruction presented by defendants, and, while not adequately stating the law, it was sufficient to arrest attention and call for a proper instruction on the subject. *Kinyon v. Railway*, 118 Iowa, 349. We may add that as the issue made by the pleadings respecting the subject-matter under discussion was, in effect, withdrawn by the parties, such issue should not in any event have been presented to the jury. *Lumber Co. v. Raymond*, 76 Iowa, 225; *Erickson v. Barber*, 83 Iowa, 367.

For the reasons pointed out in this opinion, the judg-

ment appealed from must be, and it is, *reversed,* and the cause is ordered *remanded* for a new trial.