J. L. McLeod v. W. A. Thompson, Appellant.

**Landlord and tenant:** BREACH OF CONTRACT: PLEADINGS: WAIVER OF OBJECTION. A lease provided that there should be an equal division of the profits arising from the sale of stock, "or other proceeds of the farm," except that the tenant was to have the butter made from the "milk milked from the cows on the farm." The tenant in lieu of making the butter separated the cream and sold it, one half of the proceeds for which the landlord brought suit to recover. The defense was that plaintiff had not failed to receive one-half of the "other proceeds of the farm," as alleged, and evidence was introduced without objection tending to show that the parties in the execution of the lease had treated butter made from the milk as equivalent to separated cream. *Held,* that this question was involved in the general denial of plaintiff's claim, though not specifically pleaded, and as evidence bearing theron was introduced by both parties without objection the issue should have been submitted.

*Appeal from Crawford District Court.*— Hon. F. M. Powers, Judge.

Monday, April 13, 1908.

The defendant was a tenant on plaintiff's farm for a term of three years, beginning March 1, 1902. By the terms of the lease he was to pay as rent one-half of all the proceeds of the farm, and to begin with not less than seventy-five head of cattle and fifty brood sows were to be kept on the farm, "the profits of all sales to be equally divided between each party at the time of making the sale of the stock or other proceeds of the farm." To this there was an exception in these words: "It is also agreed that the party of the second part is to have all the butter made from the milk-milked from cows on the farm." During the second and third years of the term, defendant sold butter fat to the value of $590.19, to recover one-half of which this ac-

tion was brought. After all the evidence had been introduced, the jury, on motion, was directed to return a verdict for the plaintiff. Judgment was entered accordingly, and the defendant appeals.— *Reversed.*

*W. S. Moore* and *Saunders & Stuart,* for appellant.

*Shaw, Sims & Kuehnle,* for appellee.

LADD, C. J.— By the terms of the lease, the tenant agreed to pay the landlord, " one-half of all the proceeds of the farm," except that the tenant was " to have all butter made from the milk milked from cows on the farm.", After the first year, he disposed of cream separated from the milk to a company engaged in making butter, the proceeds of which amounted to $590.19. While compensation therefor was determined by the percentage of butter fat contained in the cream, it was the latter which was taken from the farm and delivered to the creamery. No argument is required to show that cream is not the same as butter. The latter is gathered from the cream by churning, and the residue is the buttermilk. A landlord might readily assent to the tenant having all the butter which might be made with such facilities as he might have, while objecting to his appropriation of the milk or cream. The reasons for this readily suggest themselves, as that the skim milk and buttermilk might be regarded as valuable feed for calves and hogs, and fewer cows likely would be milked in order to make butter than to sell cream, resulting in the enhanced value of the increase. The language of the exception is not ambiguous, and is open to no other construction than that it gave to the tenant " the butter made from the milk." If anything, the thought that only butter was to be taken by him was emphasized by the wording of this clause, and the evidence adduced had no bearing as tending to clarify words of doubtful signification. Nevertheless, evidence was re-

ceived without objection showing conclusively that the parties understood at the time the lease was executed that the tenant was to raise the calves for the common enterprise, and the tenant have the milk and butter after having fed these. Moreover, the tenant testified in substance that he made butter from the milk until the spring of the second year, when he purchased a cream separator, and thereafter by the use of that machine separated the cream from the milk and sold it as stated; that before buying the separator he told the landlord that he was thinking of getting a separator and inquired of him, " Does it make any difference to you whether I sell cream or the butter? " To which plaintiff responded, " No; why should it? " The landlord admitted that Thompson asked him whether he cared if he bought a separator, and that he had assented, but testified that he was unable to recall whether he had said that it did not make any difference to him whether he sold cream. To this should be added the circumstances that the parties promptly divided all proceeds from the farm, save of the cream, and no claim was made for these until September of the last year, although they lived but a half mile apart, and plaintiff must have known that it was being sold during the entire period.

Evidence was introduced, without objection, not only showing the understanding between the parties, not expressed in the lease, was that the tenant should have the milk after raising the calves, but also tending to show that in the practical execution of the terms of the lease both treated and expressly agreed to treat the cream or butter fat as equivalent to butter, the manufactured article. The difference to the landlord was insignificant, and if in carrying out the lease he, as well as the tenant, recognized the sale of the butter fat as practically equivalent to that of butter, the former thereafter should not be permitted to insist upon any distinction between them. Possibly the answer was not as specific as it would have been; for, while it put in issue the

claim that the tenant had not divided equally the "other proceeds of the farm," the trial proceeded on the theory that the pleading was sufficient, and, as this matter was the only one wherein there was any dispute in the evidence, it could not have escaped the attention of the court. Attention to the course of the trial was its duty, and, the parties having treated the pleading as sufficiently specific, the court should have accepted their construction. Were this to be regarded as a separate and distinct issue, there might be some doubt whether the court might be held to have erred in not submitting it. In several cases it has been held proper to submit issues not raised by the pleadings, when consent thereto or acquiescence therein has been established by failure to object to the introduction of evidence bearing thereon or in some other manner. See *Fenner v. Crips,* 109 Iowa, 455. And where this has happened the refusal to submit such an issue was adjudged error in *Hansen v. Kline,* 136 Iowa, 101. But where the party fails to indicate, either in an amendment to his pleading, or by a request to instruct, or in some other way, a desire that an issue outside of the pleadings be submitted to the jury, it is doubtful at least whether he is in a situation to complain of the action of the court in accepting his written statement of what he relies on as contained in the pleadings on file. See *Saatoff v. Scott,* 103 Iowa, 201. But this is not that kind of a case. The defense interposed was that plaintiff had not failed to receive one-half of the "other proceeds of the farm," and the proof tended to show that this was so, inasmuch as the parties in the practical execution of the terms of the lease had treated "butter made from the milk" as equivalent to, and for their purposes the same as, cream separated from the milk. As this was involved in the general denial to plaintiff's claim, and, though not specifically alleged, the evidence bearing thereon was introduced by both parties without objection from either, we are of opinion that the issue should have gone to the jury.— *Reversed.*