John H. Cox, Appellant, v. James K. Cline, M. S. Maxin, Joe Draker, Frank Amish, Herman Vogel, W. Frederick Cline, Frank W. Hora, Frank Prizler.

**Negotiable instruments:** FRAUD IN EXECUTION OF THE SAME. Where signatures to a contract for the joint purchase of property, and to a joint note given in settlement therefor, were procured in reliance upon the genuineness of the signature of the first signer and his joint interest therein and liability therefor, but who was subsequently released from liability on the note according to a previous arrangement with him, a fraud was committed upon his associates and the note was thus rendered unenforceable in the hands of the original payee.

**Same:** RESCISSION: PLEADING: WAIVER: APPEAL. To render fraud in the execution of a note given for the purchase price of property a complete defense to an action thereon, rescission of the contract should be pleaded; but where the action was tried on the theory of rescission and without objection to evidence bearing thereon because rescission was not alleged, and the plaintiff requested an instruction on the theory that rescission was an issue, there was a waiver of the defect in pleading, and the omission can not be urged on appeal as a ground of reversal.

**Evidence:** CONVERSATION BY TELEPHONE: IDENTITY OF PERSON TALKED WITH. The identity of a person speaking through a telephone may be established not alone by the sound of his voice, but from other circumstances as well; as, from the fact that he appeared at the telephone in response to a call for a person by his name, admitted that such was his name and was familiar with the transactions inquired about.

In the instant case the evidence of identity is held sufficient to take that question to the jury and to admit the testimony concerning the conversation over the telephone.

**Sale contract:** RESCISSION: WAIVER. Where one is informed of an election to rescind his contract, but by his own act precludes the other party from stating the ground of rescission, there is a waiver of the necessity of stating the reason for rescission, and the party seeking to rescind may urge any tenable cause therefor.

**Same:** NOTICE OF RESCISSION: REASONABLE TIME. The rescission of a contract for fraud must be within a reasonable time after ascertaining the fraud; and what is a reasonable time depends upon the circumstances of the case.

In the instant case the evidence is held sufficient to take the question of notice of rescission within a reasonable time to the jury.

**Evidence:** HARMLESS ERROR. The admission of evidence bearing only upon matters concerning which no issue was submitted to the jury was not prejudicial.

**Instructions:** STATEMENT OF ISSUES. Where the jury is plainly told that unless a certain defense is established the verdict should be for plaintiff, it was not error, in stating what was essential to make out such defense, to omit doing so in the alternative form.

*Appeal from Johnson District Court.*—HON. R. P. HOWELL, Judge.

THURSDAY, MAY 12, 1910.

ACTION on a promissory note resulted in the dismissal of the petition. The plaintiff appeals.—*Affirmed.*

*Wade, Dutcher & Davis,* for appellant.

*Holbert & Kimball* and *Milton Remley,* for appellees.

LADD, J.—I. The note sued on was executed by defendants and one Stover to William T. Tracy, and by him indorsed to plaintiff, "Without recourse." With two others of like amounts, it was executed May 24, 1904, for $666.66. These were given in pursuance of a contract signed by the parties thereto, by the terms of which each subscriber agreed to pay $200 for a share in a stallion (there being ten shares), payable in cash or "one-third in one year, one-third in two years and one-third in three years after July 1, 1904, secured by joint and severable negotiable notes with interest." W. P. and John Bradley acted as agents for Tracy, and, as a help to obtaining subscribers for shares, proposed to Joe E. Stover that he head the list on the subscription paper and join in the execution of the notes, and promised that, if he would do so, a share in the horse would be transferred to him without cost, and that he would be released from payment of the notes. Stover yielded to the temptation, though apparently unconscious that in so doing he was assisting in the perpetration of a fraud on his neighbors, and, in pursuance of the arrangement, headed the list of subscribers as well as the signers of the notes. The day after the execution of the latter the Bradleys indorsed on each note "May 25, 1904, Joe Stover, released, credited by $66.66."

On the representation that Stover had subscribed for a share, and would join in the execution of the notes, becoming liable thereon, the other defendants subscribed,

*(margin note:)* 1. NEGOTIABLE INSTRUMENTS: fraud in execution of the same.

when, had they known he was to receive a share for the use of his name merely, and to be released from the note, they would not have done so. That this was a fraud on his associates appears from the opinion on the former appeal. 139 Iowa, 128.

The plaintiff acquired the note June 21, 1905, nine days prior to maturity, and it is insisted that the evidence was insufficient to sustain the finding of the jury that he was not a holder in good faith. We held otherwise on the former appeal, and an examination of the record as made on the last trial has confirmed the correctness of that conclusion.

II. To avail themselves of the fraud mentioned as a complete defense, the contract must have been rescinded, and appellant contends that rescission was neither pleaded

2. SAME: rescission: pleading: waiver: appeal.

nor proven. It may be, as said by appellee, that the allegations in the answer were sufficient, but these were withdrawn by the amended and substituted answer, which, though specifically alleging the fraud, omitted any reference to rescission. .The trial, however, proceeded on the theory that whether there had been a rescission was in issue. No objection to the evidence bearing thereon because not alleged was interposed, and the plaintiff requested an instruction that, "in order to rescind a contract, the party seeking to do so must return to the other party everything of value which he received under and by virtue of said contract. You are instructed, therefore, that unless you find from the evidence that defendants returned to said Tracy, or offered to return to him, everything of value which they received under and by virtue of said contract, they will be deemed to have accepted the terms of said contract, and be bound thereby, and your verdict must be for the plaintiff." Though there were other representations said to have been fraudulent, none of these were submitted to the jury, but plaintiff requested that the jury be instructed

that, unless the representations with respect to Stover were material and operated as a fraud on defendants, the verdict should be for plaintiff, thereby treating that issue as properly raised when this were not possible under the pleadings in the absence of rescission being alleged. We are satisfied that the defect in the amended and substituted answer was overlooked at the trial which proceeded as though rescission of the contract had been averred therein. In these circumstances the omission can not be urged as a ground of reversal. *McLeod v. Thompson,* 138 Iowa, 304; *Hanson v. Kline,* 136 Iowa, 101; *Marengo Savings Bank v. Kent,* 135 Iowa, 386; *Fenner v. Crips,* 109 Iowa, 455.

III. Nor can it be said that the evidence was insufficient to support a finding that a rescission was effected. Letters written by Maxin to Tracy in 1904 related to a breach of the contract, and not to fraud in procuring it. Maxin, acting for defendants, wrote a letter in April, 1905, saying the purchasers chose to rescind the contract, and that they held the horse as his property. But there was no evidence showing how or to whom the letter was addressed, nor where Tracy then resided. He had previously written Maxin that he had changed his location from Galesburg, Ill., to Martin, Tenn., but about this time Holbert ascertained that he had left there and had gone to southeastern Missouri and was "moving from place to place." Evidently the circumstances were not such as to raise a presumption that this letter was ever received by Tracy. In a prior communication, the date of which does not appear, Maxin had written that the horse was not up to the contract, and inquired what was to be done with him. To this Tracy had responded by offering to furnish another horse, but advising that the stallion be tried another year. This did not purport to be a rescission, and there was none unless effected through defend-

3. EVIDENCE: conversation by telephone: identy of person talked with.

ants' attorney, Holbert. As to this appellant says: "(1) That the testimony of Holbert was not admissible; (2) that the ground of rescission was not stated; and (3) that it was not made within a reasonable time." It appears that Holbert was employed by the defendants to visit Tracy and arrange a settlement if possible, and for the purpose went to Martin, Tenn., in the forepart of April, 1905. Upon reaching there, he found Tracy's name on the hotel register, but learned that he had gone to a place in southeastern Missouri, and proceeded there. Again his name appeared on the hotel register, and a horse in a livery was said to be his, but the attorney was informed that he was out in the country some twenty-eight miles distant. Thereupon Tracy was called over the telephone, and Holbert testified that upon inquiry the person at the other end said his name was Wm. T. Tracy, and that he had sold a horse to some parties at Hills (the location of defendants). Holbert then informed him that he represented said parties, and would like to talk about the matter, and inquired whether he would return to town. The answer was that he did not know. The attorney then asked if he could meet him in the country. The response was that he was moving from place to place, and did not know where he would be, and could not fix a time. Holbert then told him that the company had elected to rescind the contract, that the horse would be held from that time on as his property, and asked where the notes were. The answer was that he did not know just where they were. The attorney inquired where he would have the horse sent, and the party at the other end of the line hung up the receiver. This testimony was taken subject to objection as incompetent, immaterial, irrelevant, and the motion to strike on these grounds was subsequently overruled. The objection raised is not that the conversation was over the telephone (*Shawyer v. Chamberlain,* 113 Iowa, 742),

but that the party with whom it occurred was not identified as Tracy.

Ordinarily identity of one speaking through a telephone is by sound of voice. But it may appear by circumstances quite as certainly. From the circumstances that Tracy had been located at Martin, Tenn., had been traced to a particular place in Missouri, had appeared at the telephone in response to a call for a person of that name, admitted that such was his name, and was familiar with the transaction of the defendants, the jury might well have concluded that he was the identical person of whom the stallion had been purchased and who was named as payee in the note. The situation was somewhat analogous to that of a person responding to a letter or telegram addressed to him at his usual place of residence; the presumption being that the individual responding is the person to whom the letter or telegram had been sent. Where a call is transmitted over a telephone for a named person and one of that name responds to the call, it would seem that he may be assumed to be the identical person who has been called. As seen, other circumstances tended to confirm such inference in the case at bar, and the evidence of identity was sufficient to justify submitting to the jury whether the person with whom Holbert conversed was William Tracy, and therefore the testimony of Holbert concerning the conversation was properly admitted.

IV. The ground for rescinding the contract does not appear to have been stated to Tracy by Holbert. But Tracy was advised of the defendants' election to rescind, and, in view of his conduct in hanging up the telephone receiver, we are not inclined to hold that a statement of the ground therefor was essential. The knowledge his agents acquired in the transaction was imputed to him, and in cutting off further conversation he may be assumed not to have cared for in-

4. SALE CONTRACT: rescission: waiver.

formation as to the occasion of defendants' action. Had a particular ground been stated, as in *Donley v. Porter,* 119 Iowa, 545; *Hawes v. Swanzey,* 123 Iowa, 51, and like cases, a different question would arise. But, as none was mentioned, the defendants may urge any tenable cause that existed for rescission.

V. The defendants were bound to notify Tracy of their election to rescind within a reasonable time after ascertaining the fraud practiced. What was a reasonable time necessarily depends on circumstances.

5. SAME: notice of rescission: reasonable time.

Stover testified he informed them about two months after the purchase. Maxin fixes the date four months thereafter, one of the Clines at six or eight months, and the others at some time in the fall of 1904. That there were nine purchasers is entitled to consideration, as several persons can not be expected to act as promptly as one. The fact that Tracy was a non-resident apparently without a permanent place of abode also should be taken into account. That conditions did not change subsequent to the discovery of the fraud should have some influence. Because of these facts, it can not be said as a matter of law that the delay in advising Tracy of their election to rescind was unreasonable. That issue was for the jury.

VI. The admission in evidence of a letter written by an attorney to Tracy and affirmatively appearing not to have been received by him was without prejudice, as it merely inclosed a tally sheet, and sug-

6. EVIDENCE: harmless error.

gested the possibility of the horse not being a sure foal getter. So, too, was the secondary evidence of the pedigree without prejudice, as no issue relating thereto was submitted to the jury. The loss of letters received in evidence was sufficiently proven.

The attorney concerning whose conversations with Cline and Stover testimony was received had been sent by plaintiff to talk with them, and, for this reason, such

testimony was competent. Evidence that the fees collected for the service of the horse were insufficient to meet the expense of handling was received, but, as this had no bearing on the issue submitted, the ruling admitting the same ought not to be denounced as prejudicial.

The instructions as a whole clearly presented the issues to the jury. The seventh paragraph in its entirety correctly stated the law. The jury was plainly told that, unless the defense was made out, a verdict should be returned for plaintiff, and, in view of this, it was not error in stating what was essential to make out such defense to omit doing so in alternative form. Instruction seven and one-half was in harmony with the opinion on the former appeal.— *Affirmed.*

7. INSTRUCTIONS: statement of issues.