EXCHANGE STATE BANK, Appellee, v: C. A. BUCKLEY, Appellant.

**PLEADING:**   Amendments—Issue-Changing.   Long delayed, issue-
changing amendments may very properly be rejected by the court.

**VENDOR AND PURCHASER:**  Remedies of Purchaser—Rescission or
Recoupment.   A defrauded purchaser may not defend against his
purchase-price notes unless he either (1) rescinds the contract or
(2) recoups his damages.

*Appeal from Pottawattamie District Court.*—J. B. ROCKA-
FELLOW, Judge.

SEPTEMBER 28, 1923.

REHEARING DENIED SEPTEMBER 20, 1924.

ACTION on a $3,000 note given by defendant to the Rio
Grande Valley Land Corporation, and by it transferred to
plaintiff.   At the close of plaintiff's evidence, by direction of
the court, on motion of plaintiff, verdict was returned for
plaintiff for the amount of the note and interest, and judgment
entered thereon.   Facts appear in the opinion.   Defendant ap-
peals.—*Affirmed.*

*F. A. Turner,* for appellant.

*Preston & Dillinger,* for appellee.

ARTHUR, J.—The transaction involved was  initiated  in
June, 1918.   Appellant was a farmer, living near Walnut, Iowa.
Some time early in June, 1918, a Mr. Archer and another man
with him, representing the Rio Grande Valley Land Corpora-
tion, called on appellant at his farm, and told him that they
were going to conduct an excursion to Texas later in June, and
wanted appellant to go with them on the excursion and buy
some Texas land which they had for sale for their company.
Without speaking of any particular piece of land, they said to

appellant that the lands they had for sale raised three crops of broom corn a year, and 11 to 13 crops of alfalfa; that the land raised 100 bushels of field corn per year, and then a crop of broom corn on the same ground that year, and winter crops of onions and cabbage; that the lands were irrigated, and were supplied with plenty of good water, whenever needed, within 18 hours after water was called for; that the raw land was worth $250 per acre, and land that was clear was worth up to $400 to $500 an acre. Appellant had never been in Texas, and had no knowledge of his own as to the value of the land at that time. Later, about the 22d of June, he went with Archer on the excursion to Texas. After they got down into Texas where the company's land was located, the excursionists, among them appellant, were met with automobiles and taken about over the country and shown tracts of land and taken to the Rio Grande River, where water was being pumped for irrigation purposes. Appellant was shown a piece of land. The automobile in which defendant and A. J. McCall, president of the land company, were riding, was stopped at a tract of land, and McCall said:

"This piece of land is $400 an acre. There are 20 acres of it. Now this land we absolutely guarantee water."

There were two tracts of 20 acres each, adjoining, about which McCall said:

"We absolutely guarantee water on this land within 18 hours after you call for water."

McCall said that the land was worth $400 an acre or better. Then, after driving about for two or three days, appellant told the land salesmen that he wanted to go back and look again at the land he had first looked at, and Mr. Archer and another agent drove him to the land. The land was then offered for sale. The agent said:

"Now, this land we absolutely guarantee water on all land that we sell, within 18 hours from the time that you phone or call for water. It is in two 20's, but belongs to two different parties. The 20 with the house on is worth $400 an acre, and the other 20, $350 an acre."

The salesman asked who would take the land at $400 an acre, and appellant said:

"I will take the 20 acres that the house is on, if I can get terms, the right kind of terms."

The agent said, "It is sold." Then Archer, the agent, said:

"You better take the other 20; 20 is not enough, and the other 20 will make it all right."

Appellant said: "I will see when I get down to the car." Appellant was given the terms, and said, "I will take the 40;" and Archer said, "It is sold." At the time, ·the agent stated that, at the price they were selling raw land, the 20 acres with the house on was worth $500 per acre.

Following the sale on the 24th day of June, 1918, appellant entered into a written contract for the purchase of the land for a total consideration of $15,000, paying $500 cash down, and executing a demand note for $500 and a note for $3,000, due January 1, 1919, the note in suit, and another note for $3,500, due August 1, 1919. The balance, of $7,500, was secured by a vendor's lien upon the land, no notes being given therefor.

I.　The contract provided that the Land Corporation agreed:

"That, on or before the 1st day of August, 1919, or within a reasonable time thereafter, providing all notes and interest thereon theretofore matured shall have been fully paid, according to the terms thereof, it will cause to be delivered to the Fidelity Loan Securities Company of Kansas City, Missouri, to be by it delivered or forwarded to the said purchaser, as he may direct, the following: A warranty deed, in apt terms of law, to be dated and take effect as of this date, conveying said land to the purchaser, with all water rights, titles, and privileges incident or appurtenant thereto."

The contract further provided for an abstract showing good and merchantable title to the land vested in the vendors of said deed. The contract further provided that, should the purchaser fail to comply with any of the provisions of the contract, or fail to pay any of said notes or any part thereof or interest thereon, maturing before the 1st day of August, 1919, or fail to take the title to said land and premises when deed was tendered, the contract, at the option of the land company, or owner of said land, should be terminated, and the money and notes mentioned in

the contract as "earnest money" should be forfeited and become the property of and be retained by the land company as liquidated damages, and that the vendor's lien should be canceled. It was further provided in the contract:

"This agreement is made subject to the approval of the owner of said land herein agreed to be sold and conveyed, and should such owner disapprove same, then this agreement shall be null and void; in which event all payments and notes given by the purchaser are to be returned to the purchaser, and thereupon the Rio Grande Valley Land Corporation and the owner shall be released and discharged from all liability and responsibility thereunder."

II. About July 1, 1918, following the execution of the contract, Archer, agent of the land company, again appeared at Walnut, Iowa, and telephoned appellant to meet him. Appellant came to Walnut, and Archer and appellant went together into the plaintiff bank, and there met the president of the bank, Julius Hector. Appellant had agreed to pay the demand note of $500 with that amount of Liberty Bonds, which were in the plaintiff bank. At the request of appellant, Mr. Hector handed him the bonds, and he turned them over to Archer, and took up the $500 demand note. Immediately following this transaction, in the presence of Hector, president of appellee bank, Archer said to appellant that he had with him appellant's note for $3,000, due January 1, 1919 (the note in suit), and offered to discount it 9 per cent if appellant would take it up. Appellant refused to accept the discount and pay the note, and told Archer that he "believed there was something crooked with the deal, or he would not be so anxious to get the money." There was further talk between appellant and Archer, in the presence of Hector, in which Hector joined, about the $3,000 note, which will be hereinafter more fully set forth. After this conversation in the bank, when Hector, Archer, and appellant were present, appellant on the same day returned to the bank and had a further conversation with Hector, in which he told Hector that he believed he had been swindled, and that, as soon as he had time, he was going down to Texas to investi-

gate the land; and that, if it was all right, he would pay for it; and if it wasn't, that he would not pay for it.

III.   Afterwards, on July 1, 1918, the bank bought the $3,000 note in suit.  At a later date, revenue stamps were placed on the note by the banker and canceled by appellant.

About the middle of September, 1918, following the conversations in the bank, appellant journeyed to Texas, and examined the land he had bought.  He testified that the crops were all dried up; that there were no crops on the land; that no water was being pumped, and the irrigation ditch was full of mud; that he made an investigation as to the value of the land; that without water it was then worth one dollar an acre; that, on the 24th day of June, 1918, when the contract was entered into, the land he bought was worth about $10 an acre.

After appellant returned from Texas, he had another talk with Hector, in which, appellant testified, Hector said to him that, if he would go ahead and take the place and settle for it, he (Hector) would throw off $500 on the $3,000 note.  Appellant says he told Hector that he would not accept the offer; that Hector told him he thought it would make him a cheap place, by throwing off $500; that he refused the offer.

IV.   On March 29, 1919, this action was begun, to recover on the $3,000 note purchased by appellee bank.  On September 6, 1919, defendant filed answer.  On April 6, 1920, an amended and substituted answer was filed, admitting the execution of the note, that it was past due by its terms, and that appellant had paid nothing on it.  Further answering, appellant alleged that, at the time of the execution of the note, and as a part of the same transaction, the Rio Grande Valley Land Corporation, appellee's assignor, and appellant entered into a written contract (and set forth the contract), whereby the Land Corporation agreed to sell to appellant the land in the contract described, upon the terms and conditions therein set out; that, as a part of the consideration mentioned in the contract, and as a part of the same transaction, appellant executed the note in suit; that it was provided in said contract that the contract would not be binding upon the Land Corporation until it should be approved by its officers; that said contract was never so ap-

proved, and never became of any validity between the parties thereto; that it never has been of any binding effect upon either of the parties thereto; that, by reason thereof, appellant has never received any consideration for said note, and there is nothing due from appellant thereon. Appellant further alleged that the Land Corporation has long since abandoned said contract; that it has never at any time demanded of appellant fulfillment thereof; that it has not tendered to appellant the deed and abstract agreed to be delivered, and is not in any way demanding or requiring of appellant fulfillment of any of the terms and conditions thereof, nor is it tendering to appellant the deed and abstract therein agreed to be delivered, nor has appellee tendered such deed and abstract. Appellant further alleged that the contract provides that it is subject to the disapproval of the owner of the land, and that, if such owner disapprove the same, the contract shall become null and void, in which event all payments made and the note given by the purchaser shall be returned to such purchaser, and thereupon the Land Corporation and the owner shall be discharged from all liability and responsibility thereunder; that the contract has never been approved, and has been abandoned; that, by reason of such facts, appellant is entitled to a return of the note in suit; that appellee had full knowledge of all such facts, prior to its purchase of the note in suit. Appellant further alleged that, at the time of entering into the contract, he had no knowledge of the value of the land; that, for the purpose of inducing appellant to enter into said contract, the Land Corporation, through its agents, represented and stated to appellant that said land was reasonably worth, upon the market, at the time the contract was entered into, $375 per acre; that said representations were false; that said representations were made for the purpose of deceiving appellant, and for the purpose of inducing appellant to enter into the contract; that he believed said representations to be true, and relied thereon, and was thereby deceived; that said land was, in fact, valueless, which was well known to the Land Corporation and not known to appellant; that, at the time the note in suit was executed, appellee had full

knowledge of all the facts, and was not a holder for value in good faith, and not entitled to recover on the note.

V.   Trial of the case was begun on September 30, 1920.   On the second day of the trial, October 1, 1920, appellant filed an amendment to his amended and substituted answer, alleging that, at the time of the execution of the contract and note in suit, the Land Corporation, for the purpose of inducing appellant to enter into said contract and execute said note, represented to appellant that the land was well irrigated and well supplied with water for farming purposes; that the land would produce annually from 5 to 7 crops of alfalfa; that it would produce 3 crops of broom corn, and would produce about 100 bushels of Indian corn, and would, in addition thereto, produce a crop of cabbage; that such representations were false, and known to be false when made; that appellant believed said representations to be true, and relied upon them; that, at the time the note was executed, it was incomplete, in that it did not have revenue stamps on it; that the Land Corporation showed the appellant a large pumping station, and represented, as an inducement to appellant to enter into said contract and notes, that said pumping station furnished and supplied water from the Rio Grande River to the land mentioned in the contract; that appellant believed said statement to be true, and relied upon it; that, in fact, said pumping station did not pump or furnish water to the land, which fact was known by the land company and was not known to the appellant; that such representations were made for the purpose of deceiving appellant, and did deceive him.

Appellee moved to strike the amendment to the substituted answer on the grounds that the amendment was filed after the issues were made up, and on the second day of the trial; that the amendment raised entirely new issues, wherein appellant charged the Land Corporation with false representations as to the character of the land, setting them forth; that the amendment charged representations in regard to the pumping station, and that said amendment came too late; that appellee was not prepared to meet the new issues so raised.   The court sustained the motion to strike, observing that, when the trial began, the

day before, the ''only representation which was claimed as untrue was the statement as to the value of the land;'' that the new matters alleged were ''peculiarly within the knowledge of the defendant, and ought to have been pleaded in seasonable time, so that, if plaintiff desired to controvert any of these matters or ascertain the truth about them or what the facts were in regard to them, that he could do so;'' that the court could take judicial notice that the land was some 1,500 miles from the place of trial.

Counsel for appellant urged that he had no knowledge in regard to lack of irrigation and pumping facilities until after the case was called for trial; that such information came to him 'incidentally, his client appearing not to know that such would be a representation, and be a fraud practiced upon him, until he was so advised by his counsel.

After the ruling of the court on motion to strike, there were left in defendant's amended and substituted answer admission of the execution of the note, allegations that the contract had been abandoned by the Land Corporation and that the contract was subject to disapproval by the Land Corporation and had not been approved, and the allegation of fraudulent representation as to the value of the land and that plaintiff was not an innocent purchaser and holder of the note in due course.

VI.   Errors relied upon for reversal necessary to be considered are:

(1)   That the court erred in striking the amendment to the amended and substituted answer, for the reason that counsel for defendant had no knowledge of the facts there alleged, until the beginning of the trial; that the rights of plaintiff would not have been prejudiced by permitting the amendment to stand; that the defenses pleaded in the amendment were in the interest of justice; that plaintiff's interests could have been protected by granting a continuance.

(2)   That the court erred in directing the verdict, for the following reasons:   (a)   That said note was obtained by deception and fraud of the payee; (b) that the note was without consideration; (c) that the record shows want of good faith on the part of the payee in obtaining said note and in transferring

the note to plaintiff; (d) that the record shows that plaintiff accepted said note with knowledge of fraud of the Land Corporation in obtaining said note; (e) that the record shows that plaintiff and its officers were warned of the bad faith of the payee in procuring said note, before the purchase of said note; and (f) that the whole record shows that defendant was entitled to have his defense submitted to the jury.

Other assignments of error relate to rulings excluding testimony offered by appellant.

VII. Considering the ruling complained of in striking the amendment to the amended and substituted answer: The case was commenced on March 29, 1919; an answer was filed September 26, 1919; an amendment to original answer was filed November 26, 1919; and an amended and substituted answer was filed on April 6, 1920. The case was noticed for trial by plaintiff for the September term, 1919, for the November term, 1919, for the February term, 1920, and the April term, 1920. The case came on for trial at the September, 1920, term, and the trial of the case was begun on September 30, 1920. On the second day of the trial, October 1, 1920, appellant filed the amendment to the amended and substituted answer which was stricken by the court, of which ruling appellant complains. Above, in Division 5, we have set out the allegations of said amendment. Entirely new issues of fact laid in the state of Texas, of additional fraudulent acts by the payee of the note, were alleged in the amendment offered. About a year and a half had been consumed in making up the issues as they stood at the time the trial was commenced. The allowance of amendment to pleadings rests in the sound discretion of the trial court. *Phillips v. Van Schaick,* 37 Iowa 229; *Emerson & Co. v. Converse,* 106 Iowa 330; *Allen v. Methodist Episcopal Church,* 127 Iowa 96.

1. PLEADING: amendments: issue-changing.

Under the situation of pleadings presented by the record, we are constrained to hold that striking the amendment was not error.

VIII. We come now to consider the ruling of the court in directing verdict for the plaintiff. At the close of defendant's testimony, plaintiff moved to take the defense from the con-

2. VENDOR AND PURCHASER: remedies of purchaser: rescission or recoupment.

siteration of the jury, and directed the jury to return a verdict for the plaintiff on several grounds. Only one ground of the motion need be considered, which is:

"Because, under the law, a vendee of real estate claiming fraud or misrepresentation in the sale of land has two remedies only: that of retaining the land and suing for damages, or recoup for damages against the purchase price; and second, the right to rescind the contract for alleged fraud. The defendant has wholly failed to show the rescinding of the contract on his part, and has not shown that he has elected to retain the land and recoup for damages. He could not recoup against this plaintiff, and therefore he has not elected to pursue either of the remedies that the law gives him in such a case."

We believe it is the universal rule—certainly it is the rule in this state—that a party claiming fraud in a contract has one of two remedies only: either to rescind the contract and tender back the property received thereunder, or to affirm the contract and recoup in damages. In the instant case, appellant has not rescinded, and he does not seek to recoup in damages. There are many cases holding that one defrauded in a transaction may rescind or seek recompense in damages. Among them are *Rose v. Eggers,* 148 Iowa 306; *Lake v. Dredge,* 158 Iowa 725; *Kuehl v. Parmenter,* 195 Iowa 497. Appellant, to avail himself of the fraud pleaded as a complete defense, was required to plead and prove a rescission of his contract of purchase of the Texas land, and failure to so do was fatal. *Cox v. Cline,* 147 Iowa 353; *Geddes v. McElroy,* 171 Iowa 633.

If it had been established by the evidence that the land was entirely valueless at the time the contract of purchase was entered into, rescission of the contract would not have been necessary; for in that case, there would have been nothing of value to return. But in the instant case, defendant testified that, at the time he purchased the land, it was worth $10 an acre. The land having some value, according to the testimony of defendant himself, rescission of the contract was a condition precedent to maintaining the defense based on fraud. *Kuehl v. Parmenter,* supra. Appellant not having pleaded or attempted to

plead and prove rescission of his contract of purchase, and not having sought to recoup in damages, his defense must, therefore, fail. It was not error to direct a verdict in favor of appellee.

The judgment of the trial court must be and is—*Affirmed.*

WEAVER, EVANS, STEVENS, FAVILLE, and DE GRAFF, JJ., concur.