W. O. Mitchell v. J. W. Squire, Appellant; F. L. La Rue, W. M. Carpenter, Iowa National Bank; H. F. lackburn, C. F. Andrews, Receivers of Corning State Savings Bank; Anna L. La Rue, Executor of F. L. La Rue, Deceased; Anna L. La Rue, Guardian of F. J. La Rue; Anna La Rue and F. J. La Rue.

Action to cancel a deed: INSERTION OF GRANTEE'S NAME BY AGENT: RESTORATION OF PURCHASE MONEY: EVIDENCE. In an action to cancel a deed on the ground that the grantee's name was inserted by the unauthorized act of plaintiff's agent, such grantee can not require the plaintiff as a condition precedent to the relief sought to restore any part of the purchase money paid to such agent without showing that the plaintiff received the same or a portion thereof. Evidence reviewed and held insufficient to show that any money paid by the grantee passed to the plaintiff.

*Appeal from Adams District Court.*— Hon. W. E. Miller, Judge.

Wednesday, June 7, 1905.

THE nature of the action and remedy applied are stated in the opinion.   J. W. Squire only appeals.— *Affirmed.*

*Harl & Tinley,* for appellant.

*W. 'O. Mitchell, pro se.*

LADD, J.— Prior to November, 1903, the plaintiff, who had changed his residence from Corning to Oklahoma City, Okla., was owner of a farm in Adams county.   F. L. La Rue had advised him that it might suit a person living in Illinois, and, after considerable correspondence, wrote that this person (naming him as Mr. White of Abington, Ill.) would pay $60 per acre; the seller to place a mortgage of $15,000 on the land, and convey subject thereto, and balance of purchase price to be paid by December 1, 1903.   The letter also mentioned that White would pay La Rue a small commission, and that the latter had arranged for the loan.   The plaintiff accepted this offer, and he and his wife signed and acknowledged a deed of conveyance to Archibald White, as grantee, and also a mortgage on the land, as proposed, which, with appropriate notes and coupons, were forwarded to La Rue.   Shortly afterwards the plaintiff returned to Corning, and on November 9 a contract was prepared, by the terms of which the grantee was to assume the payment of the mortgage of $15,000, pay in cash $6,000 December 15, 1903, and $3,260 February 4, 1904; deed to be delivered to the Corning State Savings Bank, of which La Rue was president, to be held in escrow until full payment of the purchase price.   La Rue was to send this contract to White for signature.   The first payment was not made, but in December La Rue explained that White had been sick, and he had been to Illinois and obtained from him a certified check for $1,000, but did not send it to plaintiff.   After some farther correspondence the latter called on La Rue, who advanced, as he claimed, $750 for White; saying that, if White did not take the land, he would.   On January 30, 1904, La Rue

sent plaintiff certain of his obligations he had taken up, and some other items, making the total amount paid $4,000, adding: " I expect to carry farm deal myself as soon as I can get possession, and the partner I have taken can get out on the farm. Will send you $2000 and balance July 1, as agreed." A few days thereafter the bank failed, when it developed that in January, 1904, La Rue had represented to one Annis that White wanted to throw up the contract, and, as he had paid $1,000 on it, J. W. Squire, for whom Annis was acting, could buy it for $24,260. Upon consultation with Squire, the latter concluded to purchase, and on the 15th of that month sent his check of $5,260, payable to the Corning State Savings Bank. La Rue represented that he was agent of the plaintiff, and had a deed executed by him without the grantee's name written therein, and that he was authorized to insert the name of any purchaser. By his direction Annis wrote in J. W. Squire's name as grantee. On the same day La Rue claimed to Annis that he had found a purchaser in one Carpenter at an advance of $2,000, to whom a contract of sale was made, on which Carpenter paid a check of $2,000 on the Corning State Savings Bank. As this profit had been obtained so readily, Annis proposed to turn over one-half of it to La Rue, and as a result La Rue's name was inserted in the deed as joint grantee with Squire, and a contract prepared indicating their respective interests, and stipulating that La Rue guarantee the payment of Carpenter's notes. The check of Carpenter was to be paid to plaintiff, but instead was returned to him by La Rue or torn up the following morning, but the deed and contract with Carpenter were recorded. In his petition plaintiff prayed that this deed and contract be canceled; that he have judgment against La Rue and Squire for $6,250, the remainder of the purchase price, with interest; and that a vendor's lien be established against the land. This claim for judgment was resisted by Squire, who demanded the return of the money by him paid, as a condition precedent

to the cancellation of the deed, and also prayed that what he had paid be established as a preferred claim against the estate of the bank, for which a receiver had been appointed. Relief was granted as prayed by plaintiff, save that personal judgment was not entered. J. W. Squire only appeals, and his appeal, in so far as it affects the receiver of the bank, has been dismissed.

This somewhat extended statement has seemed essential to a full understanding of the questions presented. From it the conclusion is readily deducible that neither the bank of which La Rue was president nor La Rue was authorized to erase White's name from the deed and insert that of Squire or of any one else instead, or to act as plaintiff's agent in the sale of the land to any one except White, or to deliver the deed to any one else than White, or to him save upon the complete payment of the purchase price. Hence the correctness of the decree in canceling the deed to La Rue and Squire and their contract with Carpenter is not questioned. Some of the findings of fact made by the court are criticised, but, as these were important only as bearing on the personal liability of Squire for the remainder of the price, and the decree in this respect was in his favor, he cannot be heard to complain. Nor do we think he was prejudiced by that portion of the decree establishing a vendor's lien, and allowing him to obtain title to the land by redeeming therefrom. True, he was a stranger to the transaction in which plaintiff arranged to sell to White, or impliedly to allow La Rue to carry out White's agreement; and, as the contract he had made with La Rue was void for want of authority on the part of the latter, there was no privity of contract between him and Mitchell, and therefore no foundation for the relief awarded in his favor. One who is accorded an advantage to which he is not entitled, however, is not in a situation to complain.

The only debatable question raised by the record is whether Mitchell should have been required to restore to

Squire the $5,260 (or any part of it) paid by him to the
bank or La Rue when he obtained the deed.    The doctrine
is well established that a principal cannot retain the fruits
of an agent's act, and at the same time repudiate his agency.
And it may be conceded that, if any of Squire's money can
be traced to Mitchell as a part of payments made to him by
La Rue, he should be required to restore it.    See *Casady v.
Ins. Co.,* 109 Iowa, 539; *Fleishman v. Ver Does,* 111 Iowa,
322; *Russ v. Hansen,* 119 Iowa, 375.  Squire's check was
payable to the Corning State Savings Bank, and was entered
by it as a credit in the account of " F. L. La Rue, Agent,"
on the 15th day of January, 1904.    Was any of the $4,000
Mitchell received from La Rue taken from either this item,
or the fund of which it formed a part?   The first payment
of $750, was made before a sale to Squire had been contem-
plated.    The remaining $3,250 of the $4,000 turned over
to Mitchell by La Rue consisted of several items.    He had
taken up Mitchell's note of $1,075, payable to Mrs. Young,
January 6, 1904, before it was known that Squire would
take the land.    He had also taken up Mitchell's note of
$532, payable to another bank, and one of $432 owing one
De Heer; but the time is not disclosed, save by Mitchell's
statement that La Rue had said to him when there in the
fore part of January that he had procured and was carrying
these notes.    There is nothing in the record to indicate that
they were paid from the fund in the bank to the credit of
" F. L. La Rue, Agent," nor that the overdraft of $33.19
or Mitchell's checks of $200 and $37 were paid therefrom,
or the time of such payments.    A draft of $939.36 was sent
on that date, but it does not appear to have been taken from
the fund mentioned.    In other words, the proceeds of
Squire's check are shown to have gone into a particular fund,
and the evidence fails to show that a cent of the money came
from that fund, or even from the bank, subsequent to the
time the proceeds of the check were credited, or that any
previously withdrawn was taken therefrom in anticipation

of such credit. It is no answer to say that these notes were retained until after the check of Squire was cashed, for there is no evidence whatever that the bank or La Rue was reimbursed from this fund or from Squire's money. Of course, the identical money need not be traced; but the burden was on the defendant to show that it was reasonably probable that either Squire's money reached Mitchell, or else that he was so paid from a fund of which Squire's money formed a part as to indicate that it was the intention to make use of that money for such purpose. This he failed to do. If any presumptions are to be indulged in such a case, they are those in favor of honesty. For all that appears, La Rue made the payments to the plaintiff for White, or for himself in carrying out White's contract; and, in the absence of any showing to the contrary, it should be presumed that these payments were made from moneys available and which might rightfully be applied for that purpose, rather than from the proceeds of an unauthorized sale tainted with fraud and forgery. Our conclusion from the record before us is that plaintiff had the right to retain the payments made as a part of the purchase price, and, as none of these were shown to have been derived from the proceeds of the check of Squire given to La Rue as a payment on the unauthorized sale to him, the plaintiff owed no duty of restoration as a condition precedent to the cancellation of the deed.

Some question is made as to whether all deferred payments under the contract of sale to White had matured when this action was begun. A sufficient answer is that this is no concern of Squire's. It will be time enough to dispose of that question when some one interested in the contract or land raises it.— *Affirmed.*