# CHARLESTON.

WILSON v. McCONNELL et al.

Submitted June 12, 1911.   Decided February 25, 1913.

1.  DEEDS—*Grounds—Mistake.*

    If a purchaser of a lot of ground for building purposes takes a deed therefor, describing it by metes and bounds and as forty feet wide, and it is afterwards discovered to include a part of an unused public alley, not discontinued by the municipality thus reducing the size of the lot to thirty-two feet, such reduction so materially affects the lot for the .purpose intended as to confer upon the purchaser the right to have the. deed rescinded.   (p. 82).

2.  CANCELLATON OF INSTRUMENTS—*Nature of Remedy—Existence of Legal Remedy.*

    Equity will grant relief to the party injured by rescinding a contract for fraud or mistake, as to a matter materially affecting the substance of the thing contracted for, notwithstanding he has a concurrent legal remedy for the same wrong.   (p. 85).

3.  DEDICATION—*Acceptance—Non-user.*

    ·A public street or alley may be created by a dedication of the land for that purpose by the proprietor, and acceptance by a municipality; and a public easement so acquired is not lost by non-user.   (p. 83).

4.  EVIDENCE—*Best and Secondary Evidence—Loss of Original.*

    If the original map made by the proprietor, showing building lots, streets and alleys, is proven to have become detached from. the record and lost, after it was signed and acknowledged by the proprietor and the trustees of the municipality, and properly recorded, thus proving both a dedication and an acceptance of such streets and alleys as were delineated on the map, secondary evidence may be resorted to to prove that a certain alley appeared thereon.   (p. 83).

5.  DEDICATION—*Evidence—·Sufficiency.*

    Certain facts recited in the opinion are held to be sufficient evidence that an unused alley was shown to be platted on the lost map.   (p. 83).

    (ROBINSON, JUDGE, dissenting.)

Appeal from Circuit Court, Marshall County.

Suit in equity by Harry S. Wilson and another against R. S.

McConnell and others.    From a decree for plaintiffs, defendant McConnell appeals.                                    *Affirmed.*

*J. Howard Holt* and *Chas. A. Showacre,* for appellant.

*McCamic & Clarke,* for appellees.

WILLIAMS, JUDGE:

Harry S. Wilson brought this suit against W. S. McConnell and others to have rescinded a, sale and conveyance to him of a lot of ground in the City of Moundsville, and from a decree granting relief to plaintiff McConnell has taken this appeal.

The deed was rescinded on the ground that there was shown to be included within the metes and bounds of the lot a strip of ground eight feet in width, which was part of a public alley, a fact not known to the grantee. The deed describes the lot as being forty feet long on Lafayette Avenue. But if the eight foot strip is really a part of an alley running at right angles to Lafayette Avenue, then the lot is reduced in frontage to thirty-two feet. This would amount to a twenty per cent decrease in the size of the lot, a very material quantity. Such a reduction in the size of a forty foot lot would affect more injuriously the remaining portion than the same per cent of loss would affect a larger lot. Thirty-two feet of ground might be less than a person would wish to build on, whereas twenty feet taken off an hundred foot lot might not have the same relatively injurious effect upon the eighty feet remaining. If the grantor's title has failed to the eight foot strip, we think it is clearly a loss of so material a portion of the lot, as to give him the right to have his purchase rescinded, provided the failure of title is shown to be the result of mistake or fraud. *Anderson* v. *Snyder,* 21 W. Va. 632; *W. Va. &c. Co.* v. *Vinol,* 14 W. Va. 637; *Gall* v. *Bank,* 50 W. Va. 597; Hogg's Eq. Prin., sec. 45.

Rescission, like specific performance, does not exist *ex debito justitiae,* but is addressed to the sound discretion of the chancellor; and is confined to cases in which the fraud or mistake is palpable, and materially affects the substance of the thing contracted for. *W. Va. &c. Co.* v. *Vinol, supra.* Nor will rescission generally be granted if there is a complete and adequate remedy at law for the wrong complained of. *Gall* v. *Bank, supra,*

The lot, including the portion claimed by the city as a part of a public alley, had been under fence and cultivated by McConnell and his predecessors in title for more than twenty years. Yet, if it ever was a public alley, the city's right to it is not lost by non-user; nor does the statute of limitations bar it of its right to it. *Ralston* v. *Town of Weston,* 46 W. Va. 544; *Foley* v. *County Court,* 54 W. Va. 16.

The question is, did the alley actually exist? The answer depends upon whether or not there was a dedication of it by the original proprietor of the land, and an acceptance by the city. The lot lies in what is known as Purdy's Addition to the City of Moundsville. S. B. Purdy was the proprietor of land within the town, and had it laid off into lots, streets and alleys, and platted, in the year 1836. That plat was presented to the county court of Marshall county at the January term, 1836, acknowledged by Purdy and the trustees of the town for recordation, and was recorded in Deed Book No. 1 at page 219. But only the memorandum is now found, the map itself became detached and was lost, more than twenty years ago. The memorandum, however, which relates to the map and which was also recorded, shows that the streets were laid out sixty feet, and the alleys sixteen feet in width, and is sufficient to prove both a dedication and an acceptance of all streets and alleys which were actually laid off, and platted upon the map. The question then is, did the particular alley in controversy appear on that plat? No copy of the original map was produced, and no witness testified that the alley was platted on the original. Certain other maps, made at a later date by order of the city council, were offered as evidence, but were properly rejected by the court. Neither was it proven that the city's officers had, at any time, graded or repaired the alley. But notwithstanding the failure to prove the existence of the alley by the usual means in such a case, still, we think, the fact is fairly proven by the following established facts, viz.: (1). The eastern boundary line of the land which Purdy laid off into lots, streets and alleys, lay at right angles to the controverted alley; and it is proven that an open alley sixteen feet wide extends across the block contiguous to the one in which the lot in question is situate, between Purdy Avenue and the alley parallel to it, which bounds the

lot on the west, and that an extension of that alley to Purdy's eastern boundary line would coincide with the alley in question. It is highly improbable that, in laying off streets and alleys, the proprietor would have laid off an alley across some of the blocks of lots, and have ended it one block short of his property line. Such alley would appear to be as necessary to the enjoyment of the lots in that block, as it was to the enjoyment of the lots in the adjacent block; and even more so now than formerly, since Mr. McConnell himself has, in recent years, opened up another street along the eastern line of the Purdy Addition, known as Lafayette Avenue, which runs at right angles to this alley. (2). In the year 1867, Simon B. Purdy made a deed to Lewis B. Purdy, Jonathan E. Hogan and Johnson V. Lindsay for lot 27, which borders the alley on the south, and for parts of lots 28 and 29, which border it on the north, and in giving the metes and bounds of the parts of lots 28 and 29, the southern boundary line is described as the north side of an alley. That alley is the one in dispute. Here we have the solemn statement in writing by the proprietor who laid the land off into lots, streets and alleys, made at a time when he owned the lots lying on both sides of the alley, recognizing its existence and adopting it as one of the boundary lines of the lots conveyed. This is certainly very strong evidence of a dedication by the proprietor. (3). In 1878 M. C. Keily, McConnell's predecessor in title, executed to L. B. Purdy, then mayor of the town of Moundsville, a writing under seal, disclaiming any portion of the alley which he then had under fence. This paper was signed by both Keily and Purdy, and was acknowledged by Keily and admitted to record in the county court clerk's office of Marshall county; and, after being recorded, was filed in the archives of the city. It appears that, at that time, M. C. Keily had the alley, or a part of it, under fence, and the paper was doubtless intended to show that Keily did not claim adversely to the city, it not then being generally understood that adverse possession could not defeat the right of the public in its highways. This paper recites that possession of the alley was demanded by the council of the town, and that is a potent circumstance to prove its previous acceptance of the dedication by the proprietor. The paper is a solemn disclaimer by McConnell's predecessor in title, and a rec-

ognition by him of the existence of an alley. Hence, in view of all these facts and circumstances, we think the chancellor was justified in finding that the eight foot strip across the north end of the lot was a part of one of the public alleys of the city.

It is urged that plaintiff's bill should not be entertained, on the alleged ground that he has a complete and adequate remedy at law. The deed from McConnell to him contains a covenant of general warranty, and it is insisted that his right of action on the covenant affords an ample remedy. We do not think so. The grantee was put in possession and has not in fact been ousted; and his action brought before an eviction would be premature. The city may not demand possession for years to come. Wilson can not safely erect a building on that part of the lot proven to be an alley; his position is rendered precarious and uncertain, and that fact affords an additional reason for relief in equity. But if the contract is affected by fraud or mistake, equity will entertain his suit, even though he may have a remedy at law. In such case, he has a right to anticipate an ouster, and to apply to a court of equity for rescission, on account of the failure of plaintiff's title, or what is equivalent thereto in this case, the superior easement in favor of the city, which prevents him from using the lot for the purpose for which he bought it. This view is supported by the following cases: *Kelly* v. *Riley,* 22 W. Va. 247; *Thompson, Adm'r.,* v. *Catlett,* 24 W. Va. 524; *Heavener* v. *Morgan,* 30 W. Va. 335; *Koger* v. *Kane,* 5 Leigh 606; *Smith* v. *White et al.,* decided this term.

McConnell admits that, for a number of years prior to his sale to Wilson, he had heard it rumored that the city claimed the alley. Wilson had no knowledge, or even intimation, that such claim was made. It was not a contract of hazard, but a purchase and conveyance of a lot by metes and bounds, having a frontage of forty feet. If McConnell honestly thought he was the owner of the lot, and it turns out that he was the owner of only thirty-two feet of it, then the record presents a case of mutual mistake between the parties as to a material fact, which gives right of rescission to the party injured. This theory of the case is strongly supported by the evidence, and we prefer to adopt it rather than the theory of actual, intentional fraud, as to which there is little proof. There were many rea-

sons which would justify McConnell in supposing that the alley never existed.

The consideration for the lot was $1,500, settled in the following manner: Wilson conveyed to Simpson and Showacre, at McConnell's request, a lot valued at $1,000, situate in another part of the town, paid $100 in cash and executed his note to McConnell for $400. Wilson tendered in court a deed from himself and wife, duly signed and acknowledged, reconveying to McConnell the lot. The decree appealed from cancelled the note, gave Wilson a recovery against McConnell for $1,201, and directed that, upon the surrender of the note and the payment of the $1,201, McConnell could withdraw the deed from the papers in the cause.

It is insisted by counsel for appellants that, inasmuch as part of the consideration paid by Wilson was a lot of ground conveyed to a third person, he can not be placed in *statu quo,* and that, therefore, it is not possible to do complete justice by rescinding the deed from McConnell to Wilson. But that is not a matter of which appellant can complain. The conveyance to Simpson and Showacre was made at McConnell's request, and the legal effect is the same as if Wilson had paid McConnell $1,000 in money. Wilson is satisfied by a return of the money in lieu of his lot; and McConnell is restored to his former position by getting back his title to the lot. Wilson does not ask to get back title to his lot, and McConnell has no ground of complaint on that score. We think the demands of the law have been fully met by the decree appealed from, and we affirm it.

*Affirmed.*