S. J. GEDDES, Appellant, v. W. O. McELROY, Administrator, . Appellee.

**PLEADING:** Want of Consideration—Sufficiency. Certain pleading
1    *held* to sufficiently plead want of consideration.

**APPEAL AND ERROR:** Review—Appellate Court Not Trier of Fact
2, 8 —Undue Influence—Want of Consideration. On the question of sustaining a verdict, the question is not whether a verdict for the appellant would have been proper, but whether the jury was justified in accepting appellee's version of the facts. Evidence reviewed and *held* to justify a finding that a note was obtained by undue influence and without consideration.

**EVIDENCE:** Inconsistent Conduct—Admissions against Interest.
3    Conduct of a party inconsistent with his present contention is competent as tending to show that his present contention is an afterthought and a pretense.

   PRINCIPLE APPLIED: Action against an administrator on a note for $2,300. When plaintiff first pressed the note for payment, his only claim was that, when the $2,300 note was executed, a third party was owing him $3,126, and that the consideration for the $2,300 note was a cancellation by him of $2,300 of the $3,126 claim. On the trial, it was shown that, a month prior to the giving of the $2,300 note, the $3,126 indebtedness, except $126, had all been paid by a transaction between plaintiff and the maker of the note. Thereupon, plaintiff claimed that the consideration for the $2,300 note was his cancellation of the debt

of $126. *Held*, evidence as to plaintiff's conduct was admissible as an implied admission against interest, and justified the rejection of plaintiff's belated claim as to the consideration for the note.

EVIDENCE: Self-serving Declarations—Non-conclusiveness. He who introduces the self-serving declarations of his adversary is not bound thereby.

BILLS AND NOTES: Consideration—Evidence to Disprove. Under a plea of want of consideration for a note, evidence is admissible to disprove the existence of *any part* of the consideration contended for by the holder of the note.

APPEAL AND ERROR: Right of Review—Self-invited Error. An appellant may not complain that appellee has not introduced certain evidence when it was on appellant's objection that such evidence was excluded.

APPEAL AND ERROR—Right of Review—Exclusion of Evidence—Non-necessity to Continue Offer. When the court has once refused to receive evidence on a certain subject, such ruling is, in effect, a direction to the party offering to refrain from farther offer of evidence on the same point.

APPEAL AND ERROR: Review—Appellate Court Not Trier of Fact—Undue Influence—Want of Consideration.

BILLS AND NOTES: Undue Influence—Solicitation, Importunity, Argument. It will not do to say that no amount of solicitation, importunity and argument, with the aged, weak and infirm, will amount to undue influence.

BILLS AND NOTES: Undue Influence—How Shown—Influence in Other Matters. On the question of undue influence, it is material to show the degree of influence exercised by the accused over the victim in matters *other* than the particular matter in question.

BILLS AND NOTES: Undue Influence—Accused Absent When Instrument Executed. One may be guilty of exercising undue influence even though absent when the instrument in question was executed.

BILLS AND NOTES: Undue Influence—Instructions—Aged and Infirm Persons. Instructions in *In re Ames*, 51 Iowa 596, and *Cash v. Dennis*, 159 Iowa 27, as to the effect of undue influence on an aged and infirm person, re-approved.

**PLEADING:** Insufficient Pleading Treated as Sufficient—Waiver. The practical construction which parties place on the sufficiency of pleadings is conclusive.

PRINCIPLE APPLIED: Defendant sought to rescind a note contract on the ground of undue influence, but did not plead *that he had returned or offered to return the consideration received.* Plaintiff (a) did not move for a more specific statement, (b) did not specifically call the court's attention to said omission, and (c) did not object to the testimony bearing on undue influence except as "incompetent, immaterial and irrelevant." The omission was first objected to in motion for new trial. *Held,* the parties, by impliedly treating the pleadings as containing the said omitted allegation, were bound thereby, irrespective of section 3755, par. 9, Code, 1897, and the right to object to the omission was waived.

**BILLS AND NOTES:** Undue Influence—Rescission—Pleading Return of Consideration. Whether one seeking a rescission of a note on the ground of undue influence must allege and prove an offer to return the consideration for the note, when the *sole* consideration, if any, was a release of a debt due the payee from a third party, *quaere.*

**PLEADING:** Undue Influence—Rescission—Failure to Allege Return of Consideration—Nonprejudicial Error. Even though a pleading did not formally allege an offer to return the consideration (assuming such to be necessary) received on a note transaction sought to be rescinded for undue influence and want of consideration, such omission was immaterial when, on conflicting evidence, the jury found both undue influence and want of consideration.

**BILLS AND NOTES:** Undue Influence—How Shown—Influence in Other Matters.

**EVIDENCE:** "Best Evidence"—Originals Beyond Jurisdiction of Court—Copies. The production of original evidence is excused when such original is beyond the jurisdiction of the court and the possessor declines to part therewith, beyond permitting the officer taking the deposition to make copies thereof. In such case, copies duly certified by such officer as correct are admissible.

*Appeal from Jasper District Court.*—HON. JOHN F. TALBOTT, Judge.

MONDAY, OCTOBER 4, 1915.

THIS was a contest of a claim founded on a mortuary note filed by plaintiff against the estate of John W. Murphy, deceased. The defenses set up by the administrator were that there was no consideration for the note and that it was secured through undue influence. The case was tried to a jury, which returned a verdict for the defendant and, in answer to special interrogatories, found that there was no consideration for the note, and that it was executed by the decedent, John W. Murphy, as the result of undue influence exerted over him by the claimant, Geddes. The plaintiff appeals.—*Affirmed.*

*W. G. Vander Ploeg* and *McLain & Campbell*, for appellant.

*McElroy & Cross*, for appellee.

PER CURIAM: The note is in the following form:

"Murphy, Iowa, Oct. 22, 1910.

1. PLEADING: want of consideration: sufficiency.

"For value received I promise to pay S. J. Geddes $2,300 without interest after my death, or before if I elect to do so. This note shall not be negotiable or transferable or made a collateral.

,J. W. Murphy."

The signature to the note was denied by defendant in his answer, but upon the trial the signature was conceded.

Because plaintiff raises some question that defendant did not plead want of consideration, and because of other questions raised as to the defendants' pleading, we set out the second and third divisions in full.

"Division 2. For other and further answer, the defendant avers that the written instrument described therein

was executed, if at all, as evidence of a naked promise of said J. W. Murphy to the claimant to make to said claimant a gift of the amount of money described in said instrument, upon the death of said J. W. Murphy; that said J. W. Murphy received no advantage or benefit or anything of value or any consideration for said promise or for the execution of said instrument; that the claimant neither forbore nor waived any legal right in consideration of said promise or the execution of said instrument; that said instrument was executed and delivered, if at all, without consideration, and was revoked by the death of said J. W. Murphy and is void. ·

"Division 3. For other and further answer, the defendant avers that the execution by J. W. Murphy of the instrument described in said claim, if said instrument was executed by him, was procured by and was the result of undue influence exercised upon and over said J. W. Murphy by the claimant, said Murphy being at that time an old man in his 86th year, of impaired faculties and enfeebled powers. That at the time of the alleged execution of said instrument, and for many years prior thereto, the claimant was a prominent and influential clergyman of the Methodist Protestant church—a religious denomination of which said J. W. Murphy was a member; and was a trusted friend and confidential adviser in whom said J. W. Murphy reposed great confidence. That the claimant, by appealing to the religious and charitable instincts of said J. W. Murphy, arousing and exciting his prejudice against inherited wealth, falsely holding himself out as unselfishly contributing his own services, time and influence to the promotion of religious and educational work, and by other means at present unknown to the defendant, so overcame his will as to cause him to execute the instrument described in said claim, the execution of said instrument being the act and deed of the claimant rather than that of said J. W. Murphy."

At the close of the evidence, plaintiff moved for a directed verdict in his favor and to withdraw from the jury the questions as to the alleged want of consideration and undue influence, which motion was overruled. The principal grounds relied upon for a reversal are that defendant had failed to show a want of consideration for the note and had failed to show undue influence, and that therefore the general verdict and special findings of the jury are not supported by the evidence. Conceding that, had the findings of the jury been for the plaintiff, they would have support, it is not necessary to set out in detail plaintiff's evidence. We are not the triers of fact and it is not for us to pass upon a conflict in the evidence. The case being at law, the question now is whether defendant's evidence and all the circumstances in the case and proper inferences which the jury could draw therefrom are sufficient to sustain the verdict.

2. APPEAL AND ERROR: review: appellate court not trier of fact: undue influence: want of consideration.

The undisputed evidence, or the tendency of the evidence, from which the jury could have so found, shows that, when the note in question was executed, deceased was in his eighty-sixth year. His wife, five children, and two sons of his deceased daughter were then living. He owned property in Iowa and some land in Texas, reasonably worth, in the aggregate, $30,000. He was owing four notes executed to Kansas City University for sums aggregating $20,000, in addition to his other debts. About the year 1898, deceased had a severe illness, after which he was never as strong as formerly. During the last five or six years of his life, he became less self-reliant and more forgetful. He would start to speak on one subject and would not finish. His neighbors observed a change in his mental condition. He was badly stooped over, feeble and weak. He would tell things and a little while later repeat the same thing. He had three meals a day with the family, but he had a room of his own in which he kept a table, writing materials, a bucket of water, crackers, candy, and other eatables, which room was not clean, and he objected to its being cleaned. Into this room

Murphy invited Geddes and there they talked confidentially. The family knew nothing about the Geddes note while Murphy was living.

Deceased was a member of the Methodist Protestant Church more than forty-eight years and was active and prominent in church work. A few years before his death, he had a considerable financial loss in a manner the witness testifying thereto did not wish to relate. Five or six years before Murphy's death, Rev. Brown and appellant had a conversation regarding Murphy's being feeble, in which conversation Geddes said that Murphy was not competent, growing out of the fact of his age and infirmities. This conversation is testified to by Brown and not denied by Geddes.

Plaintiff was one of the trustees of the Kansas City University from its first existence until a few months before the trial of this case in the district court. He was field agent and solicitor for the university prior to 1907, for a number of years. He was field agent and special agent of the university for three years, beginning in August, 1907, and was special agent for two years. He was such field agent when the Murphy notes to the university were secured. While Geddes was a member of the board, he was employed to solicit donations and contributions. The terms of his employment prior to 1907 do not appear; thereafter his compensation was fixed by a resolution of the university at sixteen per cent. on all contributions of cash and notes secured by him, and his traveling expenses. The commission was to be paid out of the cash collected by plaintiff during the period of his employment or after the expiration of his employment, from proceeds of notes personally secured by him. A resolution of the trustees of the university, passed in September, 1910, shows that there was due plaintiff at that time $3,126. A personal memorandum kept by the chancellor of the university shows a balance of $3,056.75 due March 1, 1910.

Plaintiff was instrumental in securing the execution by Murphy of four notes to the treasurer of the university, each

maturing one year after Murphy's death. One of these notes was for $2,000, given in 1904; one for $4,000, in July, 1908; one for $4,000, in October, 1908; and one for $10,000, dated June 18, 1909. Plaintiff married Murphy's niece. He was familiar with Murphy, addressed him as "Uncle John." He was a minister of the same church to which Murphy belonged, until a short time before Murphy's death. He frequently visited Murphy's home. Deceased frequently talked confidentially with Geddes and, upon such occasions, they withdrew to a room occupied only by themselves. The execution of the notes to the university was not known to the family of deceased until after his death, nor was the execution of the note in controversy. Plaintiff borrowed money from Murphy at different times. In the year 1910, Murphy paid one Hough, for Geddes, $103, by check; at this time, plaintiff was present, and deceased said to him in the presence of Hough, when he was making out the check: "Now, that makes $1,700 or $1,800 I have paid out for you." On January 5, 1910, plaintiff was owing deceased not less than $1,800. On that date, he gave Murphy an order on the university as collateral for the payment of several loans of money for which Murphy held Geddes' notes. Plaintiff was owing deceased on September 5, 1910; for on that date he wrote a letter to deceased saying that he hoped to be able to pay him some money as soon as he returned from Kansas City. On September 27, 1910, plaintiff gave Murphy a due bill for $18, and it is not shown that it has ever been paid. On the same day, plaintiff gave Murphy a written promise to pay him annually $33.60, that being due Murphy as interest at 6 per cent. on $560, upon which sum Murphy was paying interest at the same rate on Geddes' account.

Plaintiff was a member of the board of church extension of the Iowa Annual Conference of the Methodist Protestant Church, also a member of the board of trustees of the university. Deceased was a member only of the first named board. While plaintiff was a member of both boards, de-

ceased joined with him and another member of the board to loan the university $4,000 of the church funds controlled by the board of church extension. Later, there was some dissatisfaction in regard to this loan, because it was to run for fifteen years without interest. In August, 1908, in a letter to the chancellor of the university in regard to his obtaining the execution of the Murphy notes, plaintiff said:

"I note what you say about the J. W. Murphy note and certainly sincerely thank you for it. Since last writing you I obtained positive knowledge concerning that note. Murphy says that I persuaded him to give it in a talk I had with him a short time before the General Conference. He was not asked for this information and gave it just because he wanted to I suppose. He does not know that you and I have had a word about the matter. I do not mean to say that I did not start him to talking about the gift, for I did, and then he told me all about it as I had hoped he might do."

In the same year, plaintiff wrote to the chancellor:

"For six months I have been trying to get J. W. Murphy for some large amount, and he had partially promised. Today he came and told me, in great glee, that yesterday he signed and mailed to you a note for $4,000. He expected me to feel very glad that he had done that generous act, and I was very glad, and thanked him very much; but found out that I have selfishness enough still left in me to feel some vinegary regret that he had not let me report that snug gift."

In another letter, plaintiff wrote to the same person:

"Concerning the J. W. Murphy note I feel like saying but little. I was not surprised that he sent it directly to you. I knew him well enough to know that this was just what he would probably do, and I had said to him that he might hand it to me or mail to you as he should choose. This

was a short time to Gen'l Conf., when I went to his place and talked matters over with him. He told me of the difficulties in the way, but it was in that talk that I became satisfied that he would put up another mortuary note. After his wife's return from the West, and within the past month, I went to his home twice, making other matters an excuse for going, but my real purpose was to get the university before her in a way helpful to him, and I felt that I accomplished something of the kind, and I think he felt so. But how much all I have done had to do with his gift I am sure I do not know. It may have had very little or nothing to do with it. I think that an agent gets many a note largely through the aid of your influence with many of our people. I have often spoken of this to you and to others. I have said that I was not surprised, and I was not, but when he told me he had sent it in I realized for the first time what the effect might be upon myself and was overtaken with the sense of chagrin. Yet he did what I supposed he would do. It was only by the breadth of a hair that I was permitted to turn over to the university the Ch. Ecy. loan. Murphy wanted to do it himself, and I told him to go ahead. At the very last, circumstances put the notes, money, etc., into my hands to deliver. It is not because J. W. distrusts another; it is just Murphy's way, and it is usually best to humor it. Then he did not and does not know that sending his note through me could make any difference to me. . . . I do not doubt that the pull of your influence on Brother Murphy had very much to do with his gift. I believed it all the time and tried to make the very best use of it."

In regard to the $4,000 loan to the university by the extension board, a witness says: "In this particular case, Mr. Geddes and Mr. Murphy agreed—they seemed to be one. There seemed to be no diversity of opinion between them in regard to the loan."

The testimony shows that Murphy was a man of positive

character.   After the death of Mr. Murphy, plaintiff told
the sons of deceased that the note in suit was executed for
commissions that he was to receive from the university on
subscriptions and that he had cancelled his claim against
the university after he got the note from their father.   Plain-
tiff claimed no other consideration therefor than the can-
cellation by him of a corresponding amount of his claim
against the university for commissions earned.   This matter
will be referred to more fully later in the opinion.   As before
stated, a resolution in the records of the university showed
that the amount due plaintiff for commissions on a certain
date was $3,126.   In regard to this, plaintiff testifies:   ''I
think it was after I terminated my work with the Kansas
City University when I was advised of a resolution of a
settlement between myself and the university.''

Murphy paid Geddes, as trustee of the university, Sep-
tember 27, 1910, the sum of $3,000.   Geddes, as trustee, exe-
cuted to deceased two receipts therefor.   These receipts are
regarded as important and we set them out.

''Newton, Iowa, September 27, 1910.
''Received of J. W. Murphy, $2,900 to be applied as
part payment on a mortuary note of $10,000, bearing date of
June, 1909.
''$2,900.                                    S. J. Geddes,
''Trustee of Kansas City University.''

''Newton, Iowa, September 27, 1910.
''Received of J. W. Murphy one hundred & no/100 dol-
lars, in full of one promissory note, of date of September 5,
1907, given in favor of Kansas City University.
''$100.   .                                  S. J. Geddes,
''Trustee of Kansas City University.''

The letter by plaintiff enclosing these receipts will be
referred to later.

It will be noticed that these receipts do not refer to the

$2,300 note and it is defendant's contention that this $3,000 was paid in money. These receipts were executed nearly a month before Murphy executed to plaintiff the $2,300 note in suit.

October 5, 1910, seventeen days before the $2,300 note was executed, deceased wrote Chancellor Stephens that he had paid Geddes the $3,000. Geddes retained the $3,000, applying it on his account against the university, and writing the chancellor on September 28th, saying, "I retain the $3,000 and ask the same to be charged to my account." The university complied with plaintiff's request. The record is silent regarding the unpaid balance of said account, if any there was. It is the contention of defendant that the payment of the $3,000 on September 27th had no connection with the note in suit of October 22d, and that the two transactions are entirely independent.

It is insisted by defendant that there is no evidence tending to show that the execution of the $2,300 note entered into or affected Geddes' account against the university. True, the sons of Murphy testified that plaintiff, as a part of his statement to them, stated, in substance, that the consideration for the $2,300 note was the cancellation by him of a corresponding amount of his claim against the university. This was a self-serving declaration by plaintiff, and while it is proper to consider it in connection with the rest of his declarations on that subject, we think the other circumstances in the case were such that the jury could have found against the plaintiff as to such self-serving statement. That is to say, the other circumstances were such that therefrom the jury might properly draw the inference that the alleged consideration for the $2,300 note was not the cancellation of plaintiff's claim against the university for commissions. The documentary evidence is fragmentary. Murphy is dead and cannot give his version of the transaction and plaintiff's mouth is closed by the statute as to personal transactions and communications, so that it is necessarily a matter of inference

from the facts and circumstances. The proof and inferences to be drawn from the circumstances were for the determination of the jury.

The circumstances narrated show the general tendency of the testimony; there are some other circumstances which will be stated in connection with the different points. There are some others which should be briefly noticed. Mr. Murphy was a member of and an officer in the church before referred to, from the time of its organization until his death. He was much interested in the Kansas City University. In 1910, he sold a farm in Marshall county and gave $1,000 to each of his sons and $500 to each of his daughters. But it is shown that his wife opposed selling the land unless he would agree to divide a part at least of the proceeds among his children. At different times, deceased had said that he expected to give his property to some benevolent institution. There is evidence that he thought his children were trying to get his money, but we fail to find anything in the record to justify. such a belief. Deceased continued to manage his own personal affairs and continued to hold the office of secretary of the Iowa Conference and other offices in the church until his death.

1. First as to the consideration. As, before stated, the defendant contends that the receipts given in connection with the $3,000 payment from Murphy to Geddes are dated nearly

3. EVIDENCE: in-consistent conduct: ad-missions against in-terest.

a month earlier than the note in controversy, and proceeds upon the theory that the $3,000 payment made by Murphy to plaintiff, retained by plaintiff, and charged to his account by the university, was a cash transaction entirely separate and distinct from the $2,300 note in controversy, and therefore incapable of furnishing any consideration for the note in suit. The theory of plaintiff was that the $2,300 note represented part of the $3,000 payment by Murphy to plaintiff, to be applied upon the mortuary notes which Murphy had previously given to the university; plaintiff claiming that

the university was indebted to him for a sum slightly in excess of $3,000; that he retained Murphy's payment to him, including the note in controversy, caused Murphy to be credited for the payment upon his mortuary notes, and caused the payment to be charged by the university to plaintiff on the account which it owed him for services rendered; or that, even if the $3,000 payment by Murphy had been made in cash, since the amount due him from the university was either $3,056 or $3,126, there would still be left a small balance, the release of which would constitute a sufficient consideration for the $2,300 note; claiming that his account against the university has been, in fact, entirely released and cancelled.

Appellant urges that there is no affirmative showing to negative the possibility of his having cancelled this small balance as a consideration for the note in suit. In answer to this, defendant contends that plaintiff is not in a position to urge a reversal because of the absence of such evidence, because the defendant offered to show that such balance had not been cancelled and, upon objection by plaintiff, the court excluded such evidence. Defendant concedes that such ruling was erroneous. Defendant's cases upon this proposition will be referred to later in the opinion. It is, of course, true, as contended by appellant, that a contract in writing signed by the party to be bound imports a consideration. The trial court, in the instant case, placed the burden of proof upon defendant to show want of consideration. The plaintiff cites cases holding that verdicts must have evidence to support them and, where there is no substantial evidence to overcome a prima-facie case, a verdict should be directed.

But we are of opinion that there was sufficient evidence of want of consideration to take the case to the jury upon that issue. When plaintiff urged Bower Murphy and Ellsworth Murphy, sons of decedent, to consent to the allowance and payment of the note in suit, he undertook to state what the consideration for the note was. The situation was such

that he might then be expected to mention everything constituting such consideration. The only claim in that respect made by him at that time was that the note was a part payment of his claim of $3,056 or $3,126 against the university. He did not mention the fact that $3,000 had been paid thereon a few days before the note was given, and claim that the consideration for the $2,300 note was the comparatively trifling amount of $56 or $126 (the alleged balance of his claim after the payment of $3,000), though, as already stated, that is the claim, or one of the claims, of appellant in this court. The failure of plaintiff to mention any other consideration at that time could very properly be considered by the jury as an implied admission against interest to the effect that there was nothing else which could be called a consideration, and this would constitute proof sufficient to negative the existence of a consideration in any other form than that urged by him at that time. Thus, it has been held that plaintiff's schedules of personal property filed with the township assessor, and verified by her affidavit, which contained no statement of her authorization of the note sued on, were admissible to support an allegation that she did not own the note at the time such schedules were made. *Fudge v. Marquell,* (Ind.) 72 N. E. 565. In an action against the estate of a decedent, upon a note which was equal in amount to the entire value of the decedent's estate, evidence that plaintiff, in a conversation with one of the heirs, who was subsequently made administrator, as to the renting of the decedent's land, did not mention the note, is admissible. *Watson v. Newell,* 142 N. Y. Sup. 653.

Objection to one item alone may imply admission of the rest. Abbott's Trial Evidence, p. 566 (2d Ed.).

"Conduct of a party inconsistent with his present contention may tend to show that the latter is an afterthought, and proof of such conduct is therefore competent as an admission. Thus, where defendant denies liability, it may be shown

that he made no denial on a particular occasion when a denial
would have been natural, but that he rested his defense on
some other ground, or endeavored to gain time by promises
of settlement, or tried to arrange favorable terms of payment.
In case of a plaintiff or other claimant, it may be shown that
he has failed, under suitable circumstances, to advance the
demand upon which he now relies." 16 Cyc. 954, 955. See,
also, *Williams v. Harter,* 53 Pac. 405 (121 Cal. 47) ; *West Chi-
cago Railway v. Dougherty,* 89 Ill. App. 362. In a claim
against a decedent's estate on a note, evidence by claimant
that it was founded on a consideration which was not suffi-
cient to support it destroys the presumption that there was
some consideration other than that proved by claimant. *In
re Pinkerton's Estate,* 99 N. Y. Supp. 492; *Blanshan v. Rus-
sell,* 52 N. Y. Supp. 963, affirmed in 161 N. Y. 629 (55 N. E.
1093) ; *Downs v. Racine,* (Mo.) 162 S. W. 331.

Defendant introduced in evidence the declarations of
plaintiff, some of which were self-serving. While it is proper
to receive such self-serving declarations which are a part of
the same conversation, defendant is not
4. EVIDENCE: self-serving declarations: non-conclusiveness. bound by such statements favorable to the
declarant. He may rebut such statements
or show them to be erroneous, and it is for
the court or jury to reject such portions of the statement, if
any, as appear to be inconsistent, improbable or rebutted by
other circumstances in evidence. Jones on Evidence, Secs.
293, 294 (Pocket Ed.).

From the evidence, the jury could have found that, at
the time the note in suit was given, plaintiff was indebted to
Murphy for more than the amount of the note, counting the
money Murphy had paid out for him in cancelling various
debts, and could have found from the evidence that the note
constituted no part of the $3,000 payment. As stated, the
$3,000 payment made to plaintiff by Murphy was nearly a
month before the $2,300 note was executed, and in referring
to this $3,000, plaintiff himself speaks of it as a payment in

money.  Under date of September 28, 1910, plaintiff wrote
Chancellor Stephens a letter enclosing the two receipts be-
fore set out, in which he says, in part:

"J. W. Murphy has paid to me for the University the
sum of $3,000 and I have receipted to him for same.  The
*money* is to be applied as follows (as shown by the receipts
I gave him, and as shown by the receipts which I now enclose
to you):  . . .  I retain the $3,000 and ask the same to
be charged to my account as ordered by the receipts enclosed.
. . .  The payment of this money by Mr. Murphy at this
time greatly relieves my financial strain, and of course will
be gratifying to you and to the university."

None of the documents referring to this $3,000 refer to
the $2,300 note as a part of it.  So far as the note is con-
cerned, that could not relieve plaintiff's financial strain be-
cause, by its terms, it was "non-negotiable" and could not
be used as collateral, and there is no evidence that he did
obtain money upon the note.  It is contended by appellant
that the use of the term "money" by plaintiff in the letter
was used in its broad and popular sense and that it could
include the note in question.  It is true that it is used in that
sense sometimes, but we are of opinion that the inferences to
be drawn from the circumstances in this case were for the
jury.  They might have adopted plaintiff's theory, but they
did not do so.

As stated, plaintiff now urges that, even after the pay-
ment of the $3,000, there was a small balance left of his
account against the university, that the note might have been
a part of another later payment by Murphy,
and that the cancellation of this small bal-
ance is a sufficient consideration for the note,
and plaintiff now complains that defendant
did not prove on the trial of the case that this balance had
not been paid or cancelled; but, as before stated, the defend-
ant offered to prove that fact by witness Stephens, chancellor

5. BILLS AND
NOTES: con-
sideration:
evidence to
disprove.

of the university, but the evidence was ruled out upon the objection of the plaintiff. It seems to us that the evidence was clearly competent and the ruling erroneous, and that plaintiff ought not to be permitted to profit by the error of the court caused or invited by the plaintiff. As said by this court in *Spicer v. Webster City*, 118 Iowa 561,

6. APPEAL AND ERROR: right of review: self-invited error.

562, the defendant should not be permitted to profit by its objection to the very proof which it now insists should have been made and which it could have furnished had it chosen to do so. See, also, *Walsh v. New York C. & H. R. Co.*, (N. Y.) 97 N. E. 408, 37 L. R. A. (N. S.) 1137. For other cases to the same point, see *Sours v. Great Northern Railway*, (Minn.) 84 N. W. 114; *Roche v. Nason*, (N. Y.) 77 N. E. 1007, 1009; *Hahl v. Brooks*, (Ill.) 72 N. E. 727, 728; *Lincoln County v. Chicago, B. & Q. R. Co.*, (Neb.) 108 N. W. 178, 180; *White v. Moffett*, (Ark.) 158 S. W. 505, 507; *Paul v. Western U. T. Co.*, (Mo.) 145 S. W. 99, 102; *Vance v. Drug Co.*, 149 Ill. App. 499; 3 Cyc. 252; *Spaulding v. Mott*, (Ind.) 76 N. E. 620, 624.

The offered evidence just referred to was contained in a deposition. The answers to the questions did not get to the jury because of plaintiff's objections. But the answers thereto are set out in the record in this court,

7. APPEAL AND ERROR: right of review: exclusion of evidence: non-necessity to continue offer.

and it is said by plaintiff that, if the evidence had been admitted, it would not have established the fact which plaintiff now says it was incumbent upon defendant to prove. It may not have been sufficient to have convinced the jury, but the excluded evidence would tend to prove the fact. Aside from this, the ruling of the court upon plaintiff's objection to the offered evidence was, in effect, an exclusion of all evidence upon that subject. So far as we know, the defendant may have had other witnesses to prove the point; but defendant had the right to assume that, if other similar evidence had been offered, it would have been excluded. As

bearing upon this point, see *Knudson v. Parker,* (Neb.) 96 N. W. 1010, 1011. It should be kept in mind also that the statements made by plaintiff to the sons of deceased negative the idea that the note was given to satisfy any claim as small as $126. For the reasons given, we think the court properly submitted to the jury the question as to the alleged want of consideration, and that the verdict and special finding have sufficient support. The answer of defendant, which has been before set out, was sufficient to raise the question as to the want of consideration.

8. APPEAL AND ERROR: review: appellate court not trier of fact: undue influence: want of consideration.

2. On the question as to the alleged undue influence, we shall not again refer to the evidence at any length. We are of opinion that it is sufficient to take the case to the jury on that proposition. It is true, as said by plaintiff, that solicitation, importunity, argument and persuasion are not necessarily undue influence; but it will not do to say that no degree of importunity and persuasion may amount to undue influence with a person of great age and enfeebled to some extent, physically and mentally, and where the relations between the parties are intimate. We shall content ourselves with giving plaintiff's citations at this point without discussing them or comparing the facts of the cases with the facts in the instant case. They are: *Muir v. Miller,* 72 Iowa 585, 590; *Denning v. Butcher,* 91 Iowa 425; *Beith v. Beith,* 76 Iowa 601; 9 Cyc. 455.

9. BILLS AND NOTES: undue influence: solicitation, importunity, argument.

There is some evidence to sustain the charge of undue influence and, as reasonable minds might reasonably differ in their conclusions, the question is for the jury. *Estate of Jones,* 130 Iowa, at page 184; *James v. Fairall,* 154 Iowa 253. In the case last cited, the court stated that, although the evidence was not strong, it was suggestive not only of undue influence but of fraud as well, and said: "Fraud and undue influence can rarely be established by direct proof. As a rule, no one knows what influences are used to accomplish such

ends. At best, the case must depend largely upon circumstances.'' In the instant case, if there was no consideration for the note, the obtaining of the note itself would be fraud. That the influence exerted on a party by another may be shown by proof of the influence in other matters, and that such proof is entitled to great weight, see *Good v. Zook,* 116 Iowa 582. The same case and others hold that, although a person may not be shown to be of unsound mind, yet it is proper to take into consideration his mental condition, age, and the like, as bearing upon the question of undue influence, and that what would not be improper influence of a person in sound health might be held improper as to a person in feeble mental and physical condition. *Lingle v. Lingle,* 121 Iowa 133; *Will of Wiltsey,* 135 Iowa 430, 438; *Will of Convey,* 52 Iowa 197.

10. BILLS AND NOTES: undue influence: how shown: influence in other matters.

It is not necessary that a person charged with exercising undue influence must have been present, commanding and coercing such act, if the influence was actually operative in inducing it. *Brackey v. Brackey,* 151 Iowa 99, 101, and cases. As bearing upon this question, the mental and physical condition of Murphy and his age should be considered, although mental incompetency is not set up as a separate defense. Strictly speaking, there was no fiduciary relation existing between plaintiff and deceased, yet their relations, as shown by the record, were very close. The influence exerted by plaintiff over Murphy in other matters, which the jury could have found from the letters and transactions between them, is a matter proper to be taken into consideration; the fact that, even under the view of the evidence most favorable to plaintiff, there was no consideration for the note in suit of a character directly beneficial to Murphy is a matter properly to be considered; and the fact that plaintiff did not disclose to Murphy, or concealed from him, important facts, such as the fact that he (plaintiff) was receiving

11. BILLS AND NOTES: undue influence: accused absent when instrument executed.

a commission of 16 per cent. upon Murphy's notes to the university, which commission constituted, according to plaintiff's claim, the greater part of the debt he claims Murphy was paying to him by the note in suit, is also a circumstance. Plaintiff himself said to witness Brown that Murphy was incompetent. Murphy's denunciations of his family and his notion that they had turned against him, although his family had always considered their relations as harmonious and knew nothing of the existence of any trouble, constitute a circumstance bearing upon his mental condition. It is true he had been retained in his position in the church, the work of which, from long experience, he could probably do almost automatically. Plaintiff was the nephew of Murphy by marriage; he called him Uncle John; knew all of Murphy's ways and peculiarities. In one of plaintiff's letters, he says, "It is just Murphy's way and it is usually best to humor it"; and in another, "I went to his home twice, making other matters an excuse for my going, but my real purpose was to get the university before her (his wife) in a way helpful to him." Deceased had confidence in plaintiff; frequently talked confidentially with him apart in his private room. In one of plaintiff's letters, he wrote that he was going to "get Murphy for a large sum." Deceased had frequently assisted plaintiff financially and in considerable sums. Deceased paid out for plaintiff in money more than he had ever advanced to any of his sons, without causing any estrangement between plaintiff and deceased. Plaintiff did not disclose to Murphy the fact that the execution of the notes to the university was in any way beneficial to appellant; for in one letter plaintiff writes, "He does not know that you and I have had a word about the matter," and again, "He did not and does not know that sending his note through me could make any difference to me." The giving of the note in suit was connected with the giving of the other notes; the giving of the notes was not known to Murphy's family. Without referring further to the circumstances in the case, we conclude that the

finding of the jury has sufficient support on the question of undue influence.

3. The instructions given by the court are substantially the same as the language used in the case of the *Will of Mary Ames,* 51 Iowa 596, and approved in *Cash v. Dennis,* 159 Iowa, at 27.

12. BILLS AND NOTES: un-due influence: instructions: aged and in-firm persons.

4. Plaintiff's third assignment of error is stated thus: The fact that the third count of defendant's answer does not state facts sufficient to constitute a defense is a ground for a new trial, under paragraph 9, Sec. 3755 of the Code; that said count does not state facts sufficient to constitute a defense because the restoration of the consideration received for the note is an essential element of the defense of undue influence; that defendant wholly failed to prove the defense alleged in the second count, that is, the want of consideration, hence plaintiff was prejudiced by the court's refusal of a new trial on the ground that defendant did not restore or offer to restore the alleged consideration for the note. We have already held that defendant did not fail as to his second defense, and the jury found that there was no consideration for the note; hence there was no consideration received by deceased which he or his representative was bound to restore.

13. PLEADING: insufficient pleading treated as sufficient: waiver.

Defendant contends that, even if it be conceded that the defense of undue influence was not properly pleaded be-cause of failure to allege a return or tender of any con-sideration received, nevertheless appellant waived the objec-tion by proceeding to trial as though the issue were in the case, and by failing to urge any objections to evidence of undue influence on account of alleged defect in the answer. There was no motion by plaintiff for a more specific state-ment of the answer. Plaintiff objected to some of the evi-dence by the general objection that it was incompetent, irrelevant and immaterial, but did not, in the objection, call the court's attention specifically to the point relied upon in the motion for new trial and here—that defendant had failed

to allege, as a basis for rescission, a return or tender of any consideration received. The real issue tendered by the third count of the answer was the alleged undue influence. The matter of rescission was merely an incident thereto and not a separate and distinct issue. On the question of waiver, we have said:

"To avail themselves of the fraud mentioned as a complete defense, the contract must have been rescinded, and appellant contends that rescission was neither pleaded nor proven. It may be, as said by appellee, that the allegations in the answer were sufficient, but these were withdrawn by the amended and substituted answer, which, though specifically alleging the fraud, omitted any reference to rescission. The trial, however, proceeded on the theory that whether there had been a rescission was in issue. No objection to the evidence bearing thereon because not alleged was interposed. . . . We are satisfied that the defect in the amended and substituted answer was overlooked at the trial which proceeded as though rescission of the contract had been averred therein. In these circumstances the omission cannot be urged as a ground of reversal"—citing cases. *Cox v. Cline,* 147 Iowa, at 356.

"Evidence was introduced, without objection, not only showing the understanding between the parties, not expressed in the lease, was that the tenant should have the milk after raising the calves, but also tending to show that in the practical execution of the terms of the lease both treated and expressly agreed to treat the cream or butter fat as equivalent to butter, the manufactured article. The difference to the landlord was insignificant, and if in carrying out the lease he, as well as the tenant, recognized the sale of the butter fat as practically equivalent to that of butter, the former thereafter should not be permitted to insist upon any distinction between them. Possibly the answer was not as specific as it should have been; for, while it put in issue the claim that the tenant had not divided equally the 'other

proceeds of the farm,' the trial proceeded on the theory that the pleading was sufficient, and, as this matter was the only one wherein there was any dispute in the evidence, it could not have escaped the attention of the court. Attention to the course of the trial was its duty, and, the parties having treated the pleading as sufficiently specific, the court should have accepted their construction. Were this to be regarded as a separate and distinct issue, there might be some doubt whether the court might be held to have erred in not submitting it. In several cases it has been held proper to submit issues not raised by the pleadings, when consent thereto or acquiescence therein has been established by failure to object to the introduction of evidence bearing thereon or in some other manner. See *Fenner v. Crips,* 109 Iowa 455. And where this has happened the refusal to submit such an issue was adjudged error in *Hanson v. Kline,* 136 Iowa 101.'' *McLeod v. Thompson,* 138 Iowa 304, at 306.

Some of these cases have been decided since paragraph 9 of Sec. 3755 was added to that section of the Code of 1897. If the parties at the trial treated this matter of tender as though it had been pleaded, it would be the same as though it had in fact been pleaded and, under such circumstances, the rule in prior cases as to waiver would not be changed by the addition to Sec. 3755. We think, under the record in this case, the parties treated the question now under consideration as properly in the case, and that plaintiff may not now ask a reversal on that ground.

Appellant cites *Donahue v. Prosser,* 10 Iowa 276, and cases from other jurisdictions on the point that restoration of property is an essential element of the defense of undue influence. Defendant concedes that such is the general rule, but contends that there are exceptions to it and that, if the evidence disclosed circumstances rendering a return or tender unnecessary in connection with the defense of undue influence, the issue was properly submitted to

14. BILLS AND NOTES: undue influence: rescission: pleading return of consideration.

the jury; that Murphy or his estate could rescind for fraud and undue influence, and that in such event he or his estate would be entitled to be put in *statu quo* as well as plaintiff; that the only way plaintiff's account against the university could be restored would be by the estate's paying an equivalent amount to the university, if, as contended by appellant, there was a release of plaintiff's claim for commissions; that if this is required, the estate is not placed in *statu quo* and that the right of rescission is practically denied; that where such a situation arises through fraud, undue influence, or advantage taken of an incompetent (no beneficial consideration capable of being returned having come into the hands of the party seeking a rescission), relief in the form of rescission will, nevertheless, be granted, and the loss made to fall upon the party at fault, for the return or tender is not required out of any tenderness of the law for the one guilty of fraud, and he cannot, therefore, complain if he loses in the venture money paid or property turned over to a third person, which complainant is not in position to restore. The only consideration claimed by plaintiff for the note given by Murphy is the release of his claim for commissions for obtaining mortuary notes given by Murphy, for which there was no material consideration moving to Murphy.

We shall not take the time to discuss the cases cited by appellee to this proposition, because, as we have already indicated, we think appellant waived the defect in the answer. We simply cite the cases. *O'Shea v. Vaughn* (Mass.) 87 N. E. at 618; *Wilson v. McConnell*, (W. Va.) 77 S. E. 540; *Ring v. Ring*, 111 N. Y. Supp. 713; 6 Cyc. 307; *Mitchell v. Squire*, 128 Iowa 269; *Guckenheimer v. Angevine*, 81 N. Y. 394; *Thrash v. Starbuck*, (Ind.) 44 N. E. at 546. Even though plaintiff had not waived the question as to the pleadings, the jury having found in answer to special interrogatories that there was undue influence in obtaining the note and that there was no consideration there-

15. PLEADING: undue influence: rescission: failure to allege return of consideration: nonprejudicial error.

for, and the evidence disclosing without conflict a situation which would not require restoration or tender of any supposed consideration for the note, there was no prejudicial error in giving instructions which would not make restoration or tender essential to the defense of undue influence.

5. The court admitted in evidence the mortuary notes which had been given by Murphy, a copy of the resolution of the university as to plaintiff's compensation and the amount due him for commissions, also copies of letters alleged to have been written by plaintiff to Chancellor Stephens. These are all argued together and very briefly by appellant. The argument is that such evidence was calculated to mislead the jury and inflame their minds against the claimant. We think the notes were properly admitted. It is claimed, and there is evidence tending to show, that undue influence was exercised over Murphy by plaintiff to secure such notes. Undue influence is urged as a defense to the note sued on. Under this defense, it is competent to show the surrounding facts and circumstances, including the influence of the party in other matters and upon other occasions. *Good v. Zook, supra.* And further, plaintiff was claiming a commission for securing the mortuary notes and it was proper to inquire whether or not appellant did secure such notes so as to entitle him to a commission. As to the resolution, there is some confusion in the record. The matter is referred to in the abstract and two additional abstracts. It appears that plaintiff's objection to the offer was at first sustained, but later, and as plaintiff himself had testified in rebuttal in regard to the resolution, the court admitted the copy in evidence. As we understand the record from the abstracts and amendments thereto, the original book containing the resolution was produced when Chancellor Stephens' deposition was taken in Kansas City, and the witness was not willing to have the original book returned with the deposi-

16. BILLS AND NOTES: undue influence: how shown: influence in other matters.

17. EVIDENCE: "best evidence": original beyond jurisdiction of court: copies.

tion, and a copy thereof was made and certified to be correct by the notary taking the deposition. This compared copy was returned with the deposition and offered in evidence. We think that, under the circumstances, the resolution was admissible. *Bullis v. Easton,* 96 Iowa 513. The facts are not like *Ruthven v. Clarke,* 109 Iowa 25, 30, where the original document was in possession of a party to the suit who had offered the copies, and no reasons for failing to produce the originals were shown. Furthermore, the resolution was embodied in a question to plaintiff and the resolution read as a part of the question, which question was not objected to and witness answered that he thought he received from some officer of the university a copy of the resolution, and that he was grateful when it was reported to him that the university had taken such action. What has been said in regard to the certified copy of the resolution applies also in part to the letters. The originals were produced when the deposition was taken in another state. The witness testified that the letters produced were received by him from appellant and, to the best of his knowledge, they were in the handwriting of appellant. In addition to this, appellant was called to the stand by the appellee in the district court, the letters or copies were read to him, and he was asked whether he had not, in fact, written such letters. While refusing to acknowledge their authenticity directly, he stated that he would not say that he did not write them. The copies offered were made from the originals by the notary taking the deposition and the correctness of the copies is certified to by him. We think there was no error in admitting these documents.

There was no reversible error and the judgment is— *Affirmed.*

DEEMER, C. J., WEAVER, EVANS, GAYNOR and PRESTON, JJ., concur.